Jacob ENNEN, Appellant,

v.

INTEGON INDEMNITY CORPORATION, GMAC Insurance Management Corporation, Craig Allen, and Allen Law Group, Appellees.

Integon Indemnity Corporation and GMAC Insurance Management Corporation, Cross–Appellants,

v.

Jacob Ennen, Craig Allen, And Allen Law Group, Cross–Appellees.

No. S–13832.

Supreme Court of Alaska.

Jan. 20, 2012.

---

W. Michael Moody, Atkinson, Conway & Gagnon, and Dennis M. Mestas, Law Office of Dennis M. Mestas, P.C., Anchorage, for Appellant/Cross–Appellee Ennen.

Daniel T. Quinn and Marc G. Wilhelm, Richmond & Quinn, P.C., Anchorage, and John A. Bennett and Stuart D. Jones, Bullivant Houser Bailey P.C., Portland, Oregon, for Appellees/Cross–Appellants Integon Indemnity Corp. and GMAC Insurance Management Corp.

Thomas A. Matthews and Kenneth G. Schoolcraft, Jr., Matthews & Zahare, P.C., Anchorage, for Appellees/Cross–Appellees Craig Allen and Allen Law Group.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

FABE, Justice.

# I. INTRODUCTION

Jacob Ennen was seriously injured while he was a passenger in Gordon Shanigan's car. Shanigan's insurer, Integon Indemnity Corporation (Integon), paid $50,000 to cover Shanigan's possible liability to Ennen. Under Alaska insurance statutes, Ennen would also likely have been entitled to underinsured motorist benefits under Shanigan's policy. However, Integon's policy was inconsistent with these statutes, and Integon told Ennen that he was not entitled to any additional money. Six years later, some time after Integon learned that its underinsured motorist provision violated Alaska insurance statutes, Integon paid Ennen underinsured motorist benefits plus interest and fees. Ennen sued Integon for bad faith. Integon filed a third-party complaint against Ennen's attorney, Craig Allen.

Before trial, the superior court dismissed Integon's claims against Allen on the ground that allowing Integon to implead Ennen's attorney would violate public policy. The superior court held that because Ennen did not own the insurance policy, Integon did not owe him a duty of good faith and fair dealing. Accordingly, the superior court concluded that Ennen had no cause of action for bad faith. But, in the event this ruling were to be reversed on appeal, the superior court made an alternate finding that while Integon had committed the tort of bad faith, Ennen had suffered no damages as a result. We reverse on both counts. The superior court was justifiably cautious about extending the bad faith cause of action to a new class of plaintiffs, but we conclude that Ennen, as an insured, is eligible under our existing case law to bring a cause of action for bad faith. We also conclude that Ennen established facts that would entitle him to damages. We affirm the dismissal of Integon's third-party claim against Allen on the alternative ground

that Allen was not a proximate cause of Ennen's harm.

# II. FACTS AND PROCEEDINGS

On November 7, 2000, Gordon Shanigan drove his car off of the Seward Highway, seriously injuring his passenger, Jacob Ennen. Shanigan was killed in the accident. Ennen was 18 years old and resided in Wasilla. Shanigan and Ennen had left a party earlier that evening, but only after overcoming attempts by other partygoers to prevent Shanigan from driving. A blood test documented that Shanigan had consumed alcohol and marijuana was found in the vehicle. Ennen required multiple intensive surgeries, including brain surgery, and physical and cognitive therapy.

Shanigan had an automobile insurance policy with Integon Indemnity Corporation, a subsidiary of GMAC Insurance Management Corporation (GMAC). This policy provided liability coverage "for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." Believing that Shanigan would be liable to Ennen, Integon paid Ennen the $50,000 limit for bodily injury liability. In exchange, Ennen released Integon from any claims against it or Shanigan's estate.

Integon's policy also had a provision for underinsured motorist (UIM) benefits. The policy provided that Integon would pay damages to an "insured[,] caused by an accident[,] which such insured is legally entitled to recover from the owner or operator of an ... underinsured motor vehicle." The policy defined "insured" as including "[a]ny person occupying your covered auto with the permission of the named insured." As Shanigan's passenger, Ennen was thus an "insured" under the policy. The policy also provided that "[u]nderinsured motor vehicle means a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of the accident but the limits of that bond or policy are ... [l]ess than the limit of liability for this coverage." Though this policy had been approved by Alaska's insurance regulators, it violated two Alaska statutes. Alaska Statute 28.22.101(e) and AS 28.20.440(b)(3) both require that automobile

insurance policies issued in Alaska provide for uninsured and underinsured motorist coverage in the amount of $50,000 per person and $100,000 per accident. Integon's policy violated AS 28.22.101(e) and AS 28.20.440(b)(3) because the policy would only pay UIM benefits if the underinsured vehicle had liability coverage that was less than the UIM coverage in an insurance policy (here, $50,000 per person and $100,000 per accident). Both Integon and Ennen now agree that this limitation was unlawful. In this case, because Shanigan's liability coverage (provided by Integon) was exactly the same as the UIM coverage available to Ennen pursuant to Alaska statute, under the policy's language Ennen was not entitled to UIM benefits. Though the policy was legally incorrect, Ennen's attorney, Craig Allen, concluded that Ennen did not have a claim to any benefits beyond $50,000 in liability coverage based on the policy's language.

Integon later learned that it had been improperly handling Alaska UIM claims. In 2007 Integon paid Ennen's UIM benefits plus prejudgement interest. On January 11, 2008, Ennen filed a complaint in superior court against Integon, GMAC, and Integra Insurance Services, alleging bad faith. On April 14, 2008, Integon filed a third-party complaint against Allen and his law firm, arguing that he was responsible for some of any damages suffered by Ennen. On March 20, 2009, Integon made an offer of judgment of $300,000. Ennen declined. On April 1, 2009, the superior court dismissed Integon's complaint against Allen, holding that it would violate public policy to allow a defendant to implead the plaintiff's attorney for malpractice.

The case was tried without a jury for eight days in June and July 2009. During the trial, Integon filed two motions for a directed verdict under Alaska Rule of Civil Procedure 50. On February 2, 2010, the superior court issued an "Order and Decision on Defendants' Motions for Directed Verdict and Findings of Fact and Conclusions of Law." The superior court concluded that because Ennen was not a "first-party insured" on Shanigan's policy, he had no cause of action for bad faith against Shanigan's insurer. But the superior court made alternate factual findings to apply in the event this ruling were to be reversed on appeal. The superior court found that Integon had recklessly, though not willfully, disregarded its obligations under Alaska law. However, the superior court found that Ennen had not suffered any damages and accordingly awarded neither compensatory nor punitive damages. The superior court awarded Integon $10,000 in Rule 68 attorney's fees.

Ennen appeals the ruling that he has no cause of action and also argues that he was entitled to damages. Integon appeals, arguing that it did not act in bad faith and that it deserved additional attorney's fees.

## III. STANDARD OF REVIEW

We apply our independent judgment when reviewing a superior court's interpretation of statutes.[1] We review rulings on questions of fact under the clearly erroneous standard.[2] "We may affirm the superior court on any basis appearing in the record."[3]

## IV. DISCUSSION

### A. Ennen, As An Additional Insured, Has A Cause Of Action For Bad Faith Against Integon.

In *State Farm v. Nicholson*, we held that an insured's action against its insurer for breach of the implied covenant of good faith and fair dealing sounded in tort.[4] David and Noreen Nicholson had a homeowner's insurance policy with State Farm and made a claim after a water main broke.[5] State Farm initially denied coverage but eventually

1. *Hertz v. Carothers*, 784 P.2d 659, 660 (Alaska 1990).

2. *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998).

3. *Far N. Sanitation, Inc. v. Alaska Pub. Utils. Comm'n*, 825 P.2d 867, 869 n. 2 (Alaska 1992).

4. *State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1156–57 (Alaska 1989).

5. *Id.* at 1153.

agreed to cover the loss, although at a level less than satisfactory to the Nicholsons.[6] The Nicholsons sued for bad faith, arguing that "bad faith handling of insurance claims should ... be recognized" as a tort.[7] We noted that courts in other jurisdictions had previously recognized such bad faith tort claims in two contexts. First, some courts had recognized a tort of bad faith when an insurer mishandled a claim made by the insured after a third party had sued the insured (a liability or third-party claim).[8] Second, some courts, starting with the California Supreme Court in 1973, had recognized a tort of bad faith when an insurer mishandled a claim made by parties like the Nicholsons, where the insureds sought coverage for damage to themselves or their property (an indemnity or first-party claim).[9] In *Nicholson*, we recognized the latter cause of action.[10] We held that while not every breach of a contract could give rise to a tort claim, the "special relationship between the insured and insurer in the insurance context" justified the existence of a tort cause of action.[11] We also stated that the "tort of bad faith in the insurance context can be traced to the covenant of good faith and fair dealing, a contractual duty implied in all insurance policies."[12]

But in *O.K. Lumber Co. v. Providence Washington Insurance Co.*, we held that a tort victim could not sue the tortfeasor's insurer for bad faith.[13] O.K. Lumber, a company operating a building supply store in Fairbanks, suffered two accidents. First, drilling activity by a company insured by Providence Washington caused O.K. Lumber's plant to burn down.[14] Second, a tractor trailer insured by Providence Washington collided with a pickup truck owned by O.K. Lumber.[15] O.K. Lumber sued Providence Washington for its alleged mishandling of these two claims, seeking special and punitive damages.[16] We framed the issue as "whether the insurer's duty of good faith and fair dealing benefits anyone other than the named insured."[17] We held that no such duty existed, quoting the Rhode Island Supreme Court for the proposition that the "relationship between the claimant and an insurance carrier for a third party alleged to be liable is an adversary relationship giving rise to no fiduciary obligation on the part of such insurance carrier to the claimant."[18]

This case asks whether the rule announced in *O.K. Lumber* bars an additional insured from bringing a cause of action for bad faith. In *Nicholson*, we held that a policyholder may bring a claim for bad faith against an insurer. In *O.K. Lumber*, we held that a third party suing a policyholder could not bring a claim for bad faith against the policyholder's insurer. This case presents the question whether an insured who is not the actual policyholder may bring an action for bad faith.[19]

---

6. *Id.* at 1153–54.

7. *Id.* at 1154.

8. *Id.* at 1155; *see also* 3 Alaska Administrative Code (AAC) 26.300(10) (2010) ("'[T]hird-party claimant' means any person asserting a claim against any other person."); BLACK's LAW DICTIONARY 873 (9th ed. 2009) ("liability insurance").

9. *Nicholson*, 777 P.2d at 1155–56 (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973)); *see also* 3 AAC 26.300(5) ("'[F]irst-party claimant' means a person asserting a right to payment under his or her own coverage."); BLACK's LAW DICTIONARY 873 (9th ed. 2009) ("indemnity insurance").

10. *Nicholson*, 777 P.2d at 1155–56.

11. *Id.* at 1156.

12. *Id.* at 1154.

13. 759 P.2d 523, 526 (Alaska 1988).

14. *Id.* at 524.

15. *Id.* at 525.

16. *Id.*

17. *Id.*

18. *Id.* at 525–26 (quoting *Auclair v. Nationwide Mut. Ins. Co.*, 505 A.2d 431, 431 (R.I.1986)).

19. *See* BLACK's LAW DICTIONARY 879 (9th ed. 2009) (defining "insured" as "[a] person who is covered or protected by an insurance policy"); 3 LEE R. RUSS & THOMAS F. SEGALIA, COUCH ON INSURANCE § 40:25 (3d ed. 2005) ("At the named insured's request, an insurance company may permit other individuals or entities to be added as an additional insured on the named insured's insurance policy. Often this is accomplished pursuant to a specific endorsement expressly naming the individual or entity as an additional insured on the policy. A policy may also contain a blanket

The superior court ruled that "Ennen ... has no contractual relationship with the defendants" and accordingly "[t]here is no implied covenant of good faith and fair dealing between defendants and Ennen." The superior court acknowledged that we might recognize a new cause of action for a party, like Ennen, who was an unnamed insured. But the superior court held that until we did so it was bound by its interpretation of existing precedent.

### 1. Alaska cases

■ We have previously recognized the rights of additional unnamed insureds to insurance contracts. We have specifically stated that "an unnamed party may have rights as an implied beneficiary of an insurance contract." [20] In *Simmons v. Insurance Company of North America,* for example, we recognized the rights of insureds other than the policyholder. [21] Teisha Simmons, the daughter of James Walldow, was injured in a car accident. [22] James Walldow and Carol Mills ran a school bus operation; the bus was insured in Mills's name. [23] Mills's policy provided for coverage of an individual insured's family members. [24] We held that Simmons could sue for reformation and could argue that it was the parties' intention to include Walldow on the insurance contract. [25] Because we recognized in *Simmons* the right of an additional insured to sue for reformation, we now conclude that it would be incongruous to limit other contract rights to policyholders only.

We explicitly applied the "beneficiary" reasoning used in *Simmons* in *Loyal Order of Moose, Lodge 1392 v. International Fidelity Insurance Co.* [26] Lodge 1392, based in Fairbanks, contracted with a construction firm to build a new facility. [27] International Fidelity Insurance acted as surety. [28] The construction firm failed to perform to the Lodge's satisfaction, and the Lodge sued the surety for bad faith in tort. [29] We framed the issue as being whether Alaska "recognize[s] the tort of bad faith in the principal and surety context of a commercial construction claim." [30] We held that there was such a cause of action, referencing *Nicholson* and *O.K. Lumber:*

> In our view the relationship of a surety to its obligee—an intended creditor third-party beneficiary—is more analogous to that of an insurer to its insured than to the relationship between an insurer and an incidental third-party beneficiary. *Compare Nicholson,* 777 P.2d at 1157 *with O.K. Lumber v. Providence Washington Ins. Co.,* 759 P.2d 523, 526 (Alaska 1988).[31]

We thus explained the distinction between *Nicholson* and *O.K. Lumber* as based on third-party beneficiary law.

■ We have recognized that an intended third-party beneficiary of a contract has the right to enforce the contract: "We will recognize a third-party right to enforce a contract upon a showing that the parties to the contract intended that at least one purpose of the contract was to benefit the third party." [32] It follows that an intended third-

---

additional insured endorsement which provides coverage to a limited category of individuals or entities without having to be expressly identified.").

**20.** *Stewart–Smith Haidinger, Inc. v. Avi–Truck, Inc.,* 682 P.2d 1108, 1112 (Alaska 1984).

**21.** 17 P.3d 56, 61–62 (Alaska 2001).

**22.** *Id.* at 58.

**23.** *Id.* at 58–59 (bus insured under Mills's name doing business as Happy Puppy Enterprises).

**24.** *Id.* at 59.

**25.** *Id.* at 60, 63–64.

**26.** 797 P.2d 622, 628 (Alaska 1990).

**27.** *Id.* at 623.

**28.** *Id.*

**29.** *Id.* at 624–26.

**30.** *Id.* at 626.

**31.** *Id.* at 628.

**32.** *Smallwood v. Cent. Peninsula Gen. Hosp.,* 151 P.3d 319, 324 (Alaska 2006). We follow the approach of the Restatement (Second) of Contracts on third-party beneficiary law:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate

party beneficiary of an insurance contract should be able to bring a cause of action for bad faith against the insurer. If an intended third-party beneficiary can enforce every other right in an insurance contract, it would be an aberration if the beneficiary could not also enforce this right.

■ An intended beneficiary can sue to enforce an insurance contract. An incidental beneficiary, such as a tort victim injured by the insured, on the other hand, cannot enforce the contract between the insured and insurer.[33] The tort victim is a beneficiary of the defendant's insurance contract in the sense that the contract makes it more likely that there will be money for the tort victim to collect. But the tort victim only benefits from the existence of the insurance contract indirectly: The insured did not purchase the policy with the intention to benefit the tort victim; rather, the insured purchased the policy to protect the insured from tort liability.[34] Thus, the tort victim is only an incidental beneficiary.

The distinction between intended and incidental third-party beneficiaries divides those parties who have a cause of action for bad faith and those who do not. The policyholder of an insurance contract and intended third-party beneficiaries of an insurance contract, such as additional insureds, have a cause of

action for bad faith; incidental third-party beneficiaries do not. Courts in other jurisdictions agree, holding that insurers owe a duty of good faith and fair dealing to intended third-party beneficiaries.[35]

Integon challenges the relevance of third-party beneficiary law by pointing to a passage from *O.K. Lumber* in which we noted: "O.K. Lumber argues that a third party claimant may sue for breach of this covenant, either because it is a third party beneficiary of the covenant or because public policy so dictates. We disagree." [36] Integon argues that this language means that we already rejected a distinction based on third-party beneficiary law. This is not accurate. O.K. Lumber, an incidental beneficiary, argued that third-party-beneficiary law supported finding that it had a cause of action for bad faith.[37] But incidental beneficiaries never have the power to enforce contract rights. In *O.K. Lumber*, we therefore had no occasion to address, and did not decide, whether intended beneficiaries have a cause of action for bad faith. Our decision in *Loyal Order of Moose*, decided two years after *O.K. Lumber*, confirms this interpretation. In *Loyal Order of Moose*, we characterized the holding in *O.K. Lumber* as limited to "incidental third-party beneficiar[ies]." [38]

to effectuate the intention of the parties and either

 (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

 (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Rathke v. Corr. Corp. of Am.*, 153 P.3d 303, 310 (Alaska 2007) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981)).

**33.** See *Ellis v. City of Valdez*, 686 P.2d 700, 704 (Alaska 1984).

**34.** See *Smallwood*, 151 P.3d at 324 (holding that determining whether a beneficiary is intended or incidental "should ... focus[] on the intent of the promisee").

**35.** See *Donald v. Liberty Mut. Ins. Co.*, 18 F.3d 474, 479 (7th Cir.1994); *Donaldson v. Liberty Mut. Ins. Co.*, 947 F.Supp. 429, 432–33 (D.Haw. 1996); *Nahom v. Blue Cross & Blue Shield of*

*Ariz.*, 180 Ariz. 548, 885 P.2d 1113, 1117 (App. 1994) (holding that where "the contract itself [indicates] an intention to benefit" a third-party beneficiary, the beneficiary has a right to recover); *Cancino v. Farmers Ins. Grp.*, 80 Cal.App.3d 335, 145 Cal.Rptr. 503, 506 (1978); *Hendren v. Allstate Ins. Co.*, 100 N.M. 506, 672 P.2d 1137, 1140–41 (App.1983); *Escalante v. Sentry Ins.*, 49 Wash.App. 375, 743 P.2d 832, 837–38 (1987), *overruled on other grounds by Ellwein v. Hartford Accident & Indem. Co.*, 142 Wash.2d 766, 15 P.3d 640, 647 n. 10 (2001). *But see Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769, 776 (1991), *overruled on other grounds by Wortman ex rel. Wortman v. Unger*, 254 Neb. 544, 578 N.W.2d 413, 417 (1998); *Kleckley v. Nw. Nat'l Cas. Co.*, 338 S.E. 131, 526 S.E.2d 218, 219–20 (2000).

**36.** *O.K. Lumber Co. v. Providence Washington Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988).

**37.** *Id.*

**38.** *Loyal Order of Moose, Lodge 1392 v. Int'l Fid. Ins. Co.*, 797 P.2d 622, 628 (Alaska 1990).

## 2. Other jurisdictions

The positions on this issue taken by other jurisdictions, particularly those jurisdictions on which we have relied in our previous decisions on bad faith, support finding that an additional insured, like Ennen, has a potential cause of action for bad faith.

*State Farm v. Nicholson,* the decision in which we created the cause of action for bad faith against insurers, cited to California's caselaw on this issue.[39] California was the first state to create the tort of bad faith against an insurer.[40] *Nicholson* expressly based its holding on the California Supreme Court's opinion in *Gruenberg v. Aetna.*[41] In *Nicholson,* we quoted extensively from *Gruenberg* as well as from other courts that had followed *Gruenberg* in adopting the cause of action for bad faith.[42]

In *O.K. Lumber,* we also relied on California's decisions, citing to *Murphy v. Allstate Insurance Co.,*[43] another California insurance bad faith case decided three years after *Gruenberg.*[44] Murphy had sued Pollard for the wrongful death of her young son.[45] Pollard was insured by Allstate.[46] After negotiations between Murphy and Allstate faltered, Murphy sued Allstate "alleging breach of the duty of good faith to its insured."[47] The California Supreme Court explained that while there is an implied covenant of good faith and fair dealing between the insurer and insured, that duty did not extend to an "injured claimant."[48] We relied on *Murphy* to support the statement that "the duty of good faith and fair dealing benefits only the insured and does not give rise to a cause of action in favor of a third party claimant."[49]

In explaining the insurer's obligation to act in good faith, the California Supreme Court in *Murphy* cited to another insurance bad faith case decided one year earlier, *Johansen v. California State Automobile Association Inter–Insurance Bureau.*[50] In *Johansen,* the California Supreme Court held that an additional insured could bring an action for bad faith against the insurer. Muriel Johansen was injured by the negligent driving of Gary Dearing, the minor son of Joyce Dearing.[51] Joyce Dearing had an automobile insurance policy with California State Automobile Association Inter–Insurance Bureau (CSAAIB).[52] CSAAIB was recalcitrant about settling, and Johansen eventually sued the Dearings, obtaining a judgment well in excess of policy limits.[53] Gary Dearing, the additional insured minor,[54] then assigned his rights to Johansen, who sued CSAAIB for bad faith.[55] Johansen had been assigned the rights of an additional insured and was therefore acting as an additional insured. The

---

**39.** *State Farm Fire & Cas. Co. v. Nicholson,* 777 P.2d 1152, 1155 (Alaska 1989).

**40.** *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973) (holding that an insured has a cause of action when her insurer mishandles her claim for damage to herself or her property); *Comunale v. Traders & Gen. Ins. Co.,* 50 Cal.2d 654, 328 P.2d 198 (1958) (in bank) (holding that an insured has a cause of action for bad faith if an insurer mishandles a claim by a third party against the insured); Douglas R. Richmond, *An Overview of Insurance Bad Faith Law and Litigation,* 25 Seton Hall L.Rev. 74, 77–78 (1994).

**41.** *Nicholson,* 777 P.2d at 1155.

**42.** *Id.* at 1155–56.

**43.** 17 Cal.3d 937, 132 Cal.Rptr. 424, 553 P.2d 584 (1976).

**44.** *O.K. Lumber Co. v. Providence Washington Ins. Co.,* 759 P.2d 523, 526 (Alaska 1988).

**45.** *Murphy,* 132 Cal.Rptr. 424, 553 P.2d at 586.

**46.** *Id.*

**47.** *Id.*

**48.** *Id.* at 588.

**49.** *O.K. Lumber,* 759 P.2d at 525–26.

**50.** 15 Cal.3d 9, 123 Cal.Rptr. 288, 538 P.2d 744 (1975).

**51.** *Id.* at 745–46.

**52.** *Id.* at 746.

**53.** *Id.* at 746–47.

**54.** The statement of facts in *Johansen* does not clarify Dearing's status as an insured, but it was fully explained in a later opinion. *Cancino v. Farmers Ins. Grp.,* 80 Cal.App.3d 335, 145 Cal. Rptr. 503, 504–05 n. 2 (1978).

**55.** *Johansen,* 123 Cal.Rptr. 288, 538 P.2d at 747.

court thus noted that "the rights at issue here are those of Gary Dearing, the insured," and the court's "inquiry ... focus[ed] on the nature of the relationship between the defendant insurer and its insured, [Gary] Dearing." [56] The court then held that Johansen did have a cause of action for bad faith "sound[ing] in both contract and tort." [57] The treatise *Insurance Bad Faith Litigation*, which we cited in *Nicholson*,[58] points to *Johansen* as an example of the rule that an additional insured may sue for bad faith:

> Ordinarily, a defendant cannot be sued for bad faith under an insurance policy unless the defendant was a contracting party.... But the duty of good faith extends to any insured entitled to benefits under the policy.... In *Johansen v. California State Automobile Association Inter-Insurance Bureau* ... [t]he fact that [Gary] Dearing was not a contracting party was regarded as immaterial, given his status as an insured entitled to benefits.[59]

After *Johansen*, the lower California courts confirmed that an additional insured could sue an insurer for bad faith.[60] In *Cancino v. Farmers Insurance Group*, for instance, the California Court of Appeals concluded that the *Johansen* decision required it to hold that an additional insured has a cause of action for bad faith.[61] Thus, by the time we cited California case law in *Nicholson* and *O.K. Lumber*, it was well established in California that an additional insured could sue for bad faith.

We agree with the California Supreme Court that whether an insured is a policyholder or an additional insured makes no difference. Both policyholders and additional insureds are "insured," and as such are entitled to bring causes of action for bad faith.

### 3. An "adversarial" relationship between Shanigan and Ennen does not prevent Ennen from having a cause of action for bad faith.

Integon argues that the relationship between Ennen and Integon is adversarial and that there can be no fiduciary duty between them. Integon reasons that it stood in two sets of shoes. First, it represented Shanigan, whom it protected from claims by Ennen. Second, Integon represented Ennen as Shanigan's passenger. Integon argues that because Shanigan and Ennen were adverse parties, Integon could not owe duties of good faith to both. Integon, pointing to language from *O.K. Lumber*, argues that this adversarial relationship precludes Ennen from having a cause of action for bad faith: "An insurer could hardly have a fiduciary relationship both with the insured and a claimant because the interests of the two are often conflicting." [62] Integon is correct that where the driver of a vehicle becomes liable to a passenger, there will be a tension between the insurer's role as protector of the driver against suits by the passenger and the insurer's role as the insurer of the passenger. Indeed, it is possible to say that this tension will exist whenever a policyholder becomes liable to an additional insured and the policy provides underinsured benefits because the additional insured will be able to make claims under the policy both as a tort claimant against the policyholder and as an additional insured.

We agree with Integon that when it comes to Ennen's liability claim, Ennen and Shanigan are adversarial parties: Ennen was seeking recovery for damage that Shanigan allegedly caused him. Under *O.K. Lumber*,

56. *Id.*

57. *Id.* at 750 (internal quotation marks omitted).

58. *State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1154–55 (Alaska 1989).

59. WILLIAM T. BARKER & RONALD D. KENT, NEW APPLEMAN INSURANCE BAD FAITH LITIGATION § 7.03[1] (2d ed. 2010). Note that this treatise is an updated version (with a slightly revised title) of the treatise WILLIAM M. SHERNOFF, SANFORD M. GAGE & HARVEY R. LEVINE, INSURANCE BAD FAITH LITIGATION (1984), which we cited in *Nicholson*, 777 P.2d at 1154–55.

60. *See Cancino v. Farmers Ins. Grp.*, 80 Cal. App.3d 335, 145 Cal.Rptr. 503 (1978); *Nw. Mut. Ins. Co. v. Farmers Ins. Grp.*, 76 Cal.App.3d 1031, 143 Cal.Rptr. 415 (1978).

61. *Cancino*, 145 Cal.Rptr. at 505–06.

62. *O.K. Lumber Co. v. Providence Washington Ins. Co.*, 759 P.2d 523, 526 (Alaska 1988).

Ennen could not bring a cause of action for bad faith against Shanigan's insurer for failing to pay Ennen's liability claim.[63] But the situation is different for Ennen's UIM claim. As to a UIM claim, the insurer's two roles are separate. The insurer's role as the insurer to an adversary in the context of liability claims does not affect the insurer's role as the insurer to the passenger in the context of the passenger seeking UIM benefits. As one commentator has noted, "the fact that the insurer may in some instances take the same position as the uninsured/underinsured motorist with respect to the motorist's liability and the insured's damages, does not (in most jurisdictions) negate the duty of good faith and fair dealing."[64] The Seventh Circuit Court of Appeals' decision in *Craft v. Economy Fire & Casualty Co.* explained in detail why an adversarial relationship between an insurer and a party claiming UIM benefits does not preclude an insurer from owing a duty of good faith and fair dealing to both its named insured and a party claiming UIM benefits.[65] That court concluded:

> [T]here is nothing inherent in the nature of uninsured motorist protection that is inconsistent with a requirement that the insurance company attempt in good faith to reach agreement with its insured and that any attempt to force the insured to settle for less than his claim be predicated on a bona fide dispute as to the amount of liability.[66]

Other courts have also applied the tort of bad faith in the UIM context.[67] Accordingly, we conclude that Ennen's adverse position to Shanigan on Ennen's liability claim does not preclude Integon from owing Ennen a duty of good faith on Ennen's UIM claim.

## B. The Superior Court Ruling That Integon Acted In Bad Faith Was Not Clearly Erroneous.

The superior court made alternate findings. In the event that Ennen was determined to have a cause of action for bad faith, the superior court found that Integon acted in bad faith. Specifically, the superior court found that while Integon did not engage in an "intentional" scheme to "deceive and deny UIM claims," Integon's conduct was "grossly reckless." The superior court found that Integon acted recklessly at both the "front end" (Integon's submission of a legally improper policy to the Alaska Division of Insurance) and the "back end" (Integon's wrongful denial of UIM claims after the policy was approved by the Division of Insurance). The court stated that Integon "exhibited a shocking level of indifference and reckless disregard for the information they undisputably had in their possession concerning the state of Alaska insurance law, concerning national industry standards, and concerning their own organizational knowledge, standards, and practices."

We have explained that the tort of bad faith "requires that the insurance company's refusal to honor a claim be made without a reasonable basis."[68] Integon concedes that it did not recognize that Ennen was owed UIM benefits. It acknowledges that it made "a series of mistakes" but argues that its mistakes were neither intentional nor evidence of "reckless indifference." Integon argues that its conduct was only negligent.

## 1. Integon was not entitled to rely on the approval of its policy by the Alaska Division of Insurance.

 Integon argues it was entitled to rely on the policy's UIM language once the policy was approved by the Alaska Division of Insurance but cites no authority for this proposition. Integon's obligation to comply with applicable insurance statutes is independent of its obligation to submit proposed policies to the Division of Insurance. Alaska law provides that an insurance policy may not contain a provision inconsistent with stat-

---

63. *Id.* at 525–26.

64. Barker & Kent, *supra* note 59, at § 6.02[2][c].

65. 572 F.2d 565, 568 (7th Cir.1978).

66. *Id.*

67. *See, e.g., LeFevre v. Westberry,* 590 So.2d 154, 159 (Ala.1991); *Voland v. Farmers Ins. Co. of Ariz.,* 189 Ariz. 448, 943 P.2d 808, 811 (App. 1997).

68. *Hillman v. Nationwide Mut. Fire Ins. Co.,* 855 P.2d 1321, 1324 (Alaska 1993).

utory requirements.[69] The Division of Insurance may approve a substitute provision *only* if it is "not less favorable . . . to the insured or beneficiary than the provisions otherwise required."[70] The Division of Insurance's approval is a screening mechanism, meant to catch unlawful insurance policies. Approval by the Division of Insurance cannot make an unlawful policy lawful. Obtaining Division of Insurance clearance does not authorize an insurer to issue policies that are not in accordance with Alaska statutes.

In addition, even though the Division of Insurance failed to notify Integon that its policy was legally incorrect, Integon had a number of opportunities to correct its policy. After the policy was approved, many other parties sought UIM benefits from Integon. Even if Integon was entitled to rely on the policy language, it had ample notice from other sources that the policy language was unlawful. We conclude that the record supports the superior court's determination that Integon acted in bad faith.

### 2. Integon's evidentiary objections

■ Integon argues that the superior court improperly based its alternative findings on inadmissible evidence about Integon's behavior toward insureds who were not parties to Ennen's litigation. The superior court made numerous findings of fact concerning Integon's handling of other claims besides Ennen's. Ennen characterizes Integon's argument as that the superior court violated Alaska Rule of Evidence 404(b), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith."

We conclude that the superior court did not rely on any improper evidence about third-party claims. The superior court refer-

enced third-party cases to show that Integon had notice that it was not paying proper UIM claims.[71] This finding supported the superior court's conclusion that Integon knew of the statutes governing UIM provisions and that Integon therefore should have known that it was not properly paying Ennen's claim.

### C. The Statute Of Limitations Does Not Bar Ennen's Bad Faith Claim.

■ Alaska Statute 09.10.070(a) provides that an action in tort must be "commenced within two years of the accrual of the cause of action." The superior court held that this statute of limitations did not bar Ennen's action. The superior court's ruling was based on two grounds: equitable estoppel and the discovery rule. Ennen argues that either the discovery rule or the doctrine of equitable estoppel "is sufficient to preclude application of the statute of limitations."

While Integon does challenge the application of the discovery rule, it has not appealed or addressed the superior court's alternative equitable estoppel ruling. The superior court held that Integon was "equitably estopped from asserting any statute of limitations defense." We have stated that "the party seeking to assert [equitable estoppel] [must] show that the other party made some misrepresentation, or false statement, or acted fraudulently and that he reasonabl[y] relied on such acts or representations of the other party, and due to such reliance did not institute suit timely."[72] We have also stated that "equitable estoppel requires more than inaction or silence by a person who has no obligation to speak or act. . . . Yet there can be circumstances where inaction or silence combined with acts or representations can give rise to an appropriate situation calling for the application of the estoppel doctrine."[73]

---

69. AS 21.42.140(b).

70. *Id.*

71. *See, e.g.,* Alaska R. Evid. 404(b)(1) ("Evidence of other . . . acts . . . is, however, admissible for other purposes, including . . . proof of . . . knowledge, . . . or absence of mistake or accident.").

72. *Groseth v. Ness,* 421 P.2d 624, 632 n. 23 (Alaska 1966).

73. *Id.* at 632 n. 25 (internal citations omitted).

Ennen argues that Integon has waived its appeal of the superior court's ruling on equitable estoppel because Integon's cross-appellant's brief does not address the issue of equitable estoppel. We agree. Integon's cross-appellant's brief, despite extensively discussing issues relating to the statute of limitations, never mentions equitable estoppel. Integon's entire argument in its cross-appellant's brief focuses on application of the discovery rule. Because Integon has not challenged on appeal the superior court's ruling that equitable estoppel bars the application of the statute of limitations, its arguments on the discovery rule are irrelevant.

### D. The Superior Court's Ruling In Favor Of Allen Can Be Affirmed On The Alternative Ground That Allen's Conduct Was Not A Proximate Cause Of Ennen's Damages.

Integon filed a third-party complaint against Craig Allen, Ennen's former attorney, and the Allen Law Group. Allen represented Ennen when Ennen sought insurance benefits from Integon, and Integon maintained that Allen should have realized that Integon's policy language was defective. Integon argued that AS 09.17.080, providing for apportionment of damages among multiple tortfeasors, allowed Integon to bring in Allen as a third-party defendant. Allen filed a motion to dismiss, which the superior court granted. The superior court dismissed Allen from the suit, ruling that, while AS 09.17.080 "standing alone" permitted Integon's third-party action, allowing the action would "disrupt the strong public policies" supporting the attorney-client relationship. Integon cross-appeals, arguing that the superior court was mistaken in dismissing Allen from the case.

Ennen maintains that any error in dismissing Integon's third-party complaint against Allen was harmless because there was no prejudice to Integon. In support of this argument, Ennen first points to the superior court's ruling that Integon could attribute any fault of Allen to Ennen through agency principles. According to Ennen, Integon was not prejudiced by the order dismissing its third-party claim against Allen because the trial court ruled that Allen's fault could be attributed to Ennen, not Integon, and Integon was therefore only responsible for its own share of the fault. Whether Allen's fault could be allocated to Ennen under agency principles presents an interesting question, but it is not properly before us. Neither party has appealed the ruling, and we do not need to rely on it to conclude that Integon was not prejudiced. But the superior court also found after a bench trial that even if negligent, Allen was not legally at fault for Ennen's damages. Allen maintains that this finding entitles him to a favorable judgment against Integon. We agree.

We can affirm the superior court's judgment on any ground supported by the record.[74] To apportion fault to a party under AS 09.17.080, that party's conduct must be a legal cause of the plaintiff's harm.[75] Thus, legal causation is a prerequisite for allocation of fault to Allen. The superior court determined in its alternative findings of fact that "[t]here is no proximate cause between [Allen's] conduct and Ennen's damages."

The superior court reasoned in part that Integon had a "separate, independent, and super[s]eding duty to properly identify Ennen's UIM claim, to properly evaluate it, and to properly and timely pay it," and that "[a]s such, Allen's malpractice is not a proximate cause of any harm to Ennen." We review findings of proximate cause for clear

---

74. *In re Estate of Fields*, 219 P.3d 995, 1003 (Alaska 2009) (quoting *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006)).

75. AS 09.17.080(b) ("In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each person at fault, and the extent of the causal relation between the conduct and the damages claimed."); *Fancyboy v. Alaska Village Elec. Co-op., Inc.*, 984 P.2d 1128 (Alaska 1999) (applying the doctrine of proximate cause to equitable apportionment); *see also Lake v. Construction Machinery, Inc.*, 787 P.2d 1027, 1031 (Alaska 1990), *superseded by statute*, Ch. 26, § 36, SLA 1997 ("A third party tortfeasor may escape liability by proving that it was not negligent or that its negligence did not proximately cause the employee's injury.").

error.[76] Integon argues, however, that the superior court was legally mistaken when it stated that Integon had a "separate, independent, and super[s]eding duty" to properly deal with Ennen's claim. Integon argues that it owed no duty to Ennen as an additional insured. But, as we have concluded, Integon did in fact owe a duty of good faith and fair dealing to Ennen.

The dissent argues that the superior court's causation analysis was premised on the erroneous conclusion "that Integon had a 'super[s]eding duty' to Ennen precluding a liability finding on Allen's part."[77] It is true that Alaska does not recognize a "superseding duty" doctrine. But while the superior court did characterize Integon's duty to deal properly with Ennen's claim as "separate, independent, and super[s]eding," its proximate cause analysis was based upon a factual comparison of the two parties' actions. Although the dissent asserts that the trial court "did not actually compare the conduct of Integon and Allen,"[78] the superior court did make a factual finding contrasting Integon's "reckless and knowingly indifferent" conduct with Allen's "mere[ ] ... negligence" and found that "Allen had nothing to do with" Integon's "bad faith claims practices." The superior court found that, had Integon complied with Alaska law, Allen's ignorance of the law "would not have been a legal cause of harm to Ennen."

We agree with the superior court's conclusion regarding causation. The superior court conducted an eight-day trial and heard the evidence regarding Integon's conduct. Even assuming that Allen was negligent for failing to detect Integon's deceptive practices—practices the superior court described as "recklessly deceptive" and "intentionally indifferent"—we conclude that a reasonable fact finder could have decided that Allen's negligence was not a proximate cause of Ennen's damages.

We have described the proximate cause analysis as an "intangible legal policy element."[79] The central question is "whether the conduct has been so significant and important a cause that the defendant should be legally responsible."[80]

The superior court found that Integon's conduct was "shocking ... a practice and pattern of grossly reckless ignorance and incompetence" in violation of Alaska law. The superior court noted that other claimants had been similarly injured and that at least one other attorney had also failed to recognize Integon's misconduct. We conclude that the evidence supports the superior court's findings that Integon's conduct was grossly reckless and that Allen's negligence was not a proximate cause of Ennen's harm. We therefore affirm the superior court's judgment in favor of Allen and against Integon on this alternative ground.

### E. Ennen Was Entitled To Damages.

The superior court held that Ennen had suffered no injury due to Integon's delayed payment of UIM benefits. Finding that Ennen had suffered no "emotional or financial distress," the court awarded no compensatory damages. The court explained that "[w]hatever financial distress that Ennen suffered because of the belated payment

---

76. *State v. Guinn*, 555 P.2d 530, 538 (Alaska 1976) (citing *State v. Abbott*, 498 P.2d 712, 727 (Alaska 1972)) ("The proper standard for review of the finding of proximate causation is ... the 'clearly erroneous' standard[.]").

77. Dissent at 292.

78. Dissent at 291–92.

79. *Vincent by Staton v. Fairbanks Mem'l Hosp.*, 862 P.2d 847, 851 (Alaska 1993); *see also* Glen O. Robinson, *Multiple Causation in Tort Law: Reflections on the DES Cases*, 68 Va L.Rev. 713, 713 (1982) (proximate cause is "susceptible to endless philosophical argument, as well as prac-

tical manipulation"); William L. Prosser, *Proximate Cause in California*, 38 Cal. L.Rev. 369, 369, 375 (1950) ("Proximate cause remains a tangle and a jungle, a palace of mirrors and a maze ... [it] covers a multitude of sins ... [and] is a complex term of highly uncertain meaning under which other rules, doctrines and reasons lie buried.").

80. *Vincent by Staton*, 862 P.2d at 851; *see also Robles v. Shoreside Petroleum, Inc.*, 29 P.3d 838, 841 (Alaska 2001); *Conklin v. Hannoch Weisman*, 145 N.J. 395, 678 A.2d 1060, 1072 (1996) (holding that the substantial factor test is best suited "for legal malpractice cases in which inadequate or inaccurate legal advice is alleged to be a concurrent cause of harm").

of his UIM benefits" was only "the lost use of money," which was compensated by prejudgment interest. Ennen argues that it was erroneous for the superior court "to rule that Ennen's damages were fully compensated by payment of interest on the UIM coverage." Ennen maintains that he was entitled to an award of compensatory or nominal damages. We agree.

Ennen suffered a financial loss as a result of Integon's failure to pay UIM benefits in 2000. He was deprived of the UIM benefits to which he was entitled under the policy. We have previously approved compensatory damage awards for financial deprivations suffered from an insurer's unreasonable withholding of insurance proceeds.[81] Similarly, other jurisdictions award compensatory damages for the financial hardships suffered when an insurer withholds insurance proceeds in bad faith. In *Silberg v. California Life Insurance Co.*, an insurer refused to pay medical bills necessary to treat a workplace injury suffered by the insured.[82] The California Supreme Court reversed a trial court's denial of a $75,000 award to cover the distress suffered by the insured due to the financial difficulties caused by his inability to pay his medical bills.[83]

At trial Ennen presented evidence of the financial and emotional distress he suffered. Between 2000, when Ennen suffered his accident, and 2007, when Integon paid the UIM benefits, Ennen testified that he suffered from not having the insurance proceeds. He testified that he received public assistance, that at times he was unable to afford heating oil, and that he was frequently short of food. Here, once it was established that (1) Integon had committed bad faith in withholding Ennen's insurance proceeds and (2) Ennen suffered "financial and emotional hardship" from not having the insurance proceeds, it was error not to award compensatory dam-

ages. The superior court reasoned that prejudgment interest compensated Ennen for this lost time-value of money. But in *Nicholson*, we quoted the Texas Supreme Court for one of the justifications of the bad faith cause of action: "[W]ithout such a cause of action insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed."[84] Interest alone does not compensate Ennen for his financial hardship and related distress, and at a minimum he is entitled to nominal damages.[85] We therefore remand, directing the superior court to calculate damages consistent with this opinion.

### F. Attorney's Fees

We vacate the superior court's award of attorney's fees for Integon and remand for a new award of attorney's fees for Ennen under Civil Rule 82.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND the superior court judgment for proceedings consistent with this opinion.

STOWERS, Justice, not participating.

WINFREE, Justice, dissenting in part.

I respectfully disagree with the court's resolution of Integon Indemnity Corporation's (Integon) appeal of the trial court's dismissal of Integon's third-party complaint against Craig Allen and Allen Law Group (Allen).

Integon filed a third-party claim against Allen for allocation of fault under AS 09.17.080, asserting Allen was at least concurrently at fault for Jacob Ennen's (Ennen) damages arising from the failure to promptly pay under-insured motorist coverage benefits. The trial court dismissed Integon's

---

**81.** *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264, 1270 (Alaska 1992).

**82.** 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103, 1105 (1974).

**83.** *Id.* at 1107–08, 1110–11.

**84.** *State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1156 (Alaska 1989) (quoting *Arnold v.*

*Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987)).

**85.** *See Anchorage Chrysler Ctr., Inc. v. Daimler-Chrysler Motors Corp.*, 221 P.3d 977, 990 (Alaska 2009) (stating that nominal damages are appropriate where a plaintiff shows "actual loss or injury" but fails to prove "the extent and amount of damages").

third-party complaint, setting out the following question:

> This court agrees that the language of AS 09.17.080 would, standing alone, permit [Integon to allocate fault to Allen]. The question is whether the public policy considerations that underlie the relationship between a client and his attorney (or former attorney) outweigh the clear language and general intent of the statute, such that, on the limited, narrow facts of this case, the statute will be held not to apply.

The trial court resolved this question as follows:

> The court concludes that it would contravene public policy to permit [Integon] to bring an apportionment claim against [Allen] when Ennen himself has not asserted a claim against Allen.... Also of *great* significance is the fact that [Integon] may still argue and ask the [factfinder] to apportion the fault of Allen (if any) to Ennen, under principles of agency and vicarious liability. (Emphasis in original.)

The court avoids deciding whether this ruling was correct by affirming on the alternative ground that after a bench trial, the trial court concluded Allen's professional negligence was not a proximate cause of any damage to Ennen. The fundamental flaw in the court's decision is describing the trial court's conclusion as a finding of fact rather than as a conclusion of law. The trial court did not actually compare the conduct of Integon and Allen, as required by AS 09.17.080,[1] and then find as a matter of fact that Integon should be allocated 100% of the fault. The trial court compared legal duties and concluded as a matter of law that Integon had a superseding duty to Ennen precluding a liability finding on Allen's part:

> Had defendants done their job as they should have (and they agree their performance in not properly and timely identifying and paying Ennen's UIM claim was negligent), Ennen's first attorney's lack of knowledge and experience with Alaska law would not have been a legal cause of harm to Ennen. The defendants had a separate, independent, and super[s]eding duty to properly identify Ennen's UIM claim, to properly evaluate it, and to properly and timely pay it. As such, Allen's malpractice is not a proximate cause of any harm to Ennen, at least with respect to Ennen's claim against defendants.

The trial court's superseding duty analysis was legally incorrect—to the extent Alaska has even recognized the concept of superseding duty, it must give way to the legislature's allocation of fault mandate.[2] The proximate cause ruling, based on legal duty, not on a finding of fact, simply does not support the court's alternative affirmance of the trial court's ruling on Integon's third-party complaint against Allen for allocation of fault.[3]

I would reach the underlying question whether the trial court correctly dismissed Integon's third-party claim against Allen. Because the court does not reach this question, I note only that I have serious doubts whether the dismissal was legally correct—if the court did not share those doubts, it would not need to rely on an infirm alternative

1. *See* AS 09.17.080 (providing for fault to be allocated to a party, "the trier of fact shall consider both the nature of the conduct of each person at fault, and the extent of the causal relation between the conduct and the damages claimed"); AS 09.17.900 (defining "fault" for AS 09.17.080 as "acts or omissions that are in any measure negligent, reckless, or intentional towards the person.... Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault").

2. *See Sowinski v. Walker,* 198 P.3d 1134, 1149–56 (Alaska 2008) (discussing transition to pure comparative negligence with pure several liability and overruling prior dram shop cases that found no fault could be allocated to minor who illegally purchased alcohol).

3. Even if the trial court's proximate cause ruling could be viewed as a finding of fact, I would conclude that finding was clearly erroneous. Allen's conduct, as out-of-state counsel representing an Alaskan on matters of Alaska law, was nearly as shocking as Integon's—I am not as willing as the trial court to excuse Allen's "lack of knowledge and experience with Alaska law" given Allen's undertaking on Ennen's behalf. And if Ennen had sued Allen along with Integon, is there any real doubt there would have been an actual and realistic allocation of fault between those two defendants? I fail to see why Ennen's failure to sue Allen should change the result.

ground for affirmance of the trial court's ruling.

