*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GAROLD CHARLES, | ) | |
| | ) | Supreme Court No. S-14678 |
| Appellant, | ) | |
| | ) | Superior Court No. 1KE-10-00102 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ANTHONY STOUT, TARA LORAINE STOUT, and CREDIT UNION 1, | ) | |
| | ) | |
| | ) | No. 6824 - September 13, 2013 |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, William B. Carey, Judge.

Appearances: Charles W. Coe, Law Office of Charles W. Coe, Anchorage, for Appellant. No appearance by Appellees Anthony Stout and Tara Loraine Stout. Cynthia L. Ducey, Delaney Wiles, Inc., Anchorage, for Appellee Credit Union 1.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

Garold Charles was in an accident while riding as a passenger in a vehicle belonging to Tara and Anthony Stout. Charles brought negligence claims against the Stouts and Credit Union 1, the lienholder on the Stouts' vehicle. Credit Union 1 moved for summary judgment. Charles opposed the motion, relying on testimony from Tara's

deposition and contending in part that he was a third-party beneficiary of an alleged contract between Credit Union 1 and the Stouts by which the credit union agreed to provide liability insurance. The superior court struck Tara's testimony and granted summary judgment to Credit Union 1. Charles appeals. We affirm.

## II. FACTS AND PROCEEDINGS

Garold Charles filed a complaint against Anthony Stout, Tara Loraine Stout, and Credit Union 1 seeking compensation for injuries he allegedly received in a 2008 rollover accident on the Tongass Highway. The Stouts were married but separated at the time of the accident and held joint title to the car. Charles's complaint alleged that he was riding as a passenger in the Stouts' vehicle and that Anthony was driving while intoxicated. It alleged that Anthony lost control, the vehicle rolled several times, and Anthony then fled the scene. The complaint alleged not only that Anthony was negligent in driving the car but also that Tara and Credit Union 1 both had ownership interests in the car and were liable for negligently entrusting it to Anthony. Anthony did not answer the complaint and was eventually defaulted, but Credit Union 1 and Tara both answered, Tara acting pro se.

Credit Union 1 moved for summary judgment, arguing that its only involvement with the car was as lender and lienholder, which by law is not a sufficient basis for liability.[1] In response, Charles sought to depose Tara about the liability insurance she may have purchased from Credit Union 1 at the time she financed the vehicle.

---

[1] Credit Union 1 relied on AS 45.29.402, which provides that "[t]he existence of a security interest, agricultural lien, or authority given to a debtor to dispose of or use collateral, without more, does not subject a secured party to liability in contract or tort for the debtor's acts or omissions."

Tara did not have counsel at her deposition. In response to questions by Charles's attorney, she testified that she thought she had contracted with Credit Union 1 for liability insurance in addition to loan financing. She testified that she switched from an insurance company to Credit Union 1 because the credit union's insurance was "a lot cheaper [and] a lot more convenient." She testified that she thought she had "the minimum insurance," "the normal coverage of what would be [necessary in order to be] legal to drive." She also testified that when she changed her insurance over to Credit Union 1, the new insurance did not cover Anthony because the two of them "were separated completely" and Anthony was in jail. She testified that when Anthony later took possession of the vehicle, before the accident, she informed Credit Union 1 that she did not own the vehicle anymore, at which point the credit union changed "the payments and the insurance and all that" from her name to Anthony's.

Soon after Credit Union 1's attorney began her cross-examination, Tara asserted that she did not want to continue without an attorney and that she wished to leave the deposition. The attorneys for Credit Union 1 and Charles both advised her against it, warning her that if she left before the deposition was completed she could be held liable for expenses and monetary sanctions. After several contentious exchanges Tara left the deposition, and Credit Union 1's attorney was unable to complete her cross-examination. The superior court subsequently ordered Tara to appear again, but she failed to attend either her re-noticed deposition or a hearing on sanctions.

Charles relied heavily on Tara's deposition testimony in his opposition to the pending motion for summary judgment, in which he also raised several new theories of liability. The superior court allowed Charles to amend his complaint to include these new theories. The amended complaint asserted that Charles was a third-party beneficiary of an agreement by Credit Union 1 to provide liability insurance to the Stouts, and it included claims for breach of contract and breach of the covenant of good faith and fair

dealing. The superior court expressly stated that it would consider these additional claims when deciding Credit Union 1's motion for summary judgment.

Credit Union 1 moved to strike Tara's deposition testimony. The superior court granted the motion, both as a sanction against Tara and under Alaska Civil Rule 32(b), which provides that "objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." The court decided that excluding the testimony was necessary to protect Credit Union 1's right to cross-examination — thwarted by Tara's early departure from the deposition — and because the testimony was hearsay not falling within any exception to the hearsay rule. The court subsequently granted the motion for summary judgment, observing that the only evidence raised in opposition was the deposition testimony, which had been stricken, and that even when that evidence was considered, Credit Union 1 was entitled to judgment as a matter of law. Charles appeals the decision to strike Tara's deposition testimony and the grant of summary judgment.

## III.    STANDARD OF REVIEW

We review grants of summary judgment de novo, "draw[ing] all factual inferences in favor of, and view[ing] the facts in the light most favorable to, the party against whom summary judgment was granted."[2] We will affirm the grant of summary judgment when the record presents no genuine issues of material fact and the movant was entitled to judgment as a matter of law.[3]

---

[2]    *Interior Cabaret, Hotel, Rest. & Retailers Ass'n v. Fairbanks N. Star Borough*, 135 P.3d 1000, 1002 (Alaska 2006) (citing *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

[3]    *Smith v. State*, 282 P.3d 300, 303 (Alaska 2012) (quoting *Cragle v. Gray*, (continued...)

## IV.    DISCUSSION

**There Is No Genuine Issue Of Material Fact As To Whether Charles Was An Intended Third-Party Beneficiary Of A Contract To Provide Insurance.**

There is no evidence in this case of an actual, written insurance contract that would provide liability coverage for the Stouts' vehicle at the time of the accident. What Charles alleges instead is a *promise to provide* such insurance — a promise that Credit Union 1 allegedly breached. Inherent in this theory, according to Charles, are genuine issues of fact that preclude summary judgment in Credit Union 1's favor: whether Credit Union 1 actually made this promise and whether Charles himself was an intended third-party beneficiary of the promise. Even assuming the existence of a contract to provide liability insurance, we conclude that Charles has failed to raise a genuine issue of material fact as to whether he was a third-party beneficiary of that contract with the right to bring suit for its alleged breach.

Charles bases his rights as a third-party beneficiary on the theory that the Stouts' liability insurance policy, had one existed, would have included underinsured motorist (UIM) coverage unless the Stouts explicitly declined it,[4] and such coverage, had it existed, would have been for his benefit. Citing *Ennen v. Integon Indemnity Corp.*,[5] which we decided after the grant of summary judgment in this case, Charles asserts that as the intended beneficiary of this never-placed UIM coverage, he has a cause of action

---

[3](...continued)
206 P.3d 446, 449 (Alaska 2009)).

[4]    *See* AS 28.20.445(e)(3) (providing that the UIM coverage that is required to be offered "may be rejected by the insured in writing").

[5]    268 P.3d 277 (Alaska 2012).

against Credit Union 1 for its breach of the promise to provide the insurance in the first place.

Intended third-party beneficiaries have enforceable rights in an insurance contract, including the right to bring claims for bad faith against the insurer.[6] Incidental beneficiaries, such as tort victims, lack those rights.[7] We decided in *Ennen* that an injured passenger was an intended third-party beneficiary because the vehicle owner's uninsured motorist policy "defined 'insured' as including '[a]ny person occupying your covered auto with the permission of the named insured.' "[8] Because "[b]oth policyholders and additional insureds are 'insured,' " we held that both "are entitled to bring causes of action for bad faith."[9]

In this case there is no written agreement that Credit Union 1 would provide liability insurance, nor is there any insurance policy from which third-party rights could be extrapolated. Charles relies on the written loan agreement between the Stouts and Credit Union 1, but the agreement adds nothing to his claim. Under the loan agreement, the Stouts agreed to maintain insurance on the vehicle, with Credit Union 1 having the right but not the obligation to secure insurance at the Stouts' cost if the Stouts failed to secure it themselves.[10] Under the agreement, the Stouts also acknowledged that any such

---

[6]     *Id.* at 284.

[7]     *Id.*

[8]     *Id.* at 280 (alteration in original).

[9]     *Id.* at 286.

[10]     The record indicates that Credit Union 1 did invoke its right to place insurance on the vehicle to protect its interests in the collateral. The letter Credit Union 1 sent to the Stouts apprising them of this stated, "This policy does not insure against bodily injury, death, or property damage liability and does not satisfy Alaska's
(continued...)

insurance placed by Credit Union 1 would be primarily for the credit union's own protection, and that "this insurance does not cover liability or personal injury protection to [the Stouts] if the vehicle is involved in an accident."

Charles contends that this language in the loan agreement left the Stouts uncertain as to whether Credit Union 1 would be providing insurance, and if so of what type. He further relies on Tara's testimony that employees of Credit Union 1 led her to believe that it was providing coverage that "would make it legal for her to drive, as well as[] cover the vehicle damage and liability." But we can assume these facts to be true and still find lacking a necessary element of Charles's claim: that Credit Union 1's promise to Tara that it would provide liability insurance was intended at least in part to be for Charles's benefit.

We find no support for such an argument in Tara's disputed deposition testimony, which we have thoroughly reviewed. Although Tara did testify, with some confusion and internal inconsistency, that she thought Credit Union 1 had agreed to provide liability insurance, she did not testify that either she or Credit Union 1 intended that the insurance benefit anyone other than themselves.[11] Indeed, as noted above, Tara testified that the insurance did not even cover her then-husband Anthony, from whom she was separated when she allegedly procured it, and that when Anthony took possession of the vehicle, sometime before the accident in which Charles was injured, the credit union "took it out of [her] name, the payments and the insurance and all that."

---

[10](...continued)
mandatory motor vehicle liability insurance requirements of AS[] 28.22.001."

[11]     *See Ennen*, 268 P.3d at 284 ("[T]he tort victim only benefits from the existence of the insurance contract indirectly: The insured did not purchase the policy with the intention to benefit the tort victim; rather, the insured purchased the policy to protect the insured from tort liability.").

Because there is no evidence that Charles was an intended third-party beneficiary of an alleged contract to provide insurance, we do not need to reach the underlying issue of whether such a contract even existed.[12]

## V. CONCLUSION

We AFFIRM the superior court's grant of summary judgment.

---

[12] We also do not reach the following issues: (1) whether the superior court erred in striking Tara's deposition testimony; (2) whether there are genuine issues of material fact regarding breach of contract and breach of the covenant of good faith and fair dealing; (3) whether the superior court improperly relied on Tara's credibility for purposes of summary judgment; and (4) whether the superior court erred in considering whether Anthony was a permissive driver.