*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY and MICHAEL J. LINA JR., | ) ) ) | Supreme Court Nos. S-15637/15657 |
| | ) | Superior Court No. 3AN-00-12188 CI |
| Appellants and Cross-Appellees, | ) ) | O P I N I O N |
| | ) | |
| v. | ) | No. 7195 – August 25, 2017 |
| | ) | |
| SANDRA GONZALEZ, | ) | |
| | ) | |
| Appellee and Cross-Appellant. | ) ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sen K. Tan, Judge.

Appearances: Rebecca J. Hozubin, Hozubin, Moberly, Lynch & Associates, Anchorage, for Appellants/Cross-Appellees. W. Michael Moody and Sarah A. Marsey, Atkinson, Conway & Gagnon, Anchorage, and Dennis M. Mestas, Law Offices of Dennis M. Mestas, PC, Anchorage, for Appellee/Cross-Appellant.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.

## I.  INTRODUCTION

An insured sued her auto insurer and one of its adjusters, alleging that the insurer breached the insurance contract and committed tortious bad faith by withholding underinsured motorist benefits and that the adjuster negligently handled her claim for those benefits.  The insurer then paid all available underinsured motorist benefits to the insured, including interest.  The insured continued her tort claims, alleging additional financial and emotional harm from the delayed benefits payment.  The insured proposed a jury instruction addressing the effect of the insurer's belated payment, but the superior court rejected that instruction.  After trial the jury determined that (1) the insurer had acted in bad faith, but its conduct was not a substantial factor in causing the insured's asserted harm, and (2) the adjuster had not been negligent.  The superior court subsequently ordered the jury to award the insured nominal damages.  The jury then awarded the insured $2 in nominal damages and later awarded $450,000 in punitive damages.

The superior court awarded the insured prevailing party costs and attorney's fees against the insurer.  The court also awarded the adjuster prevailing party attorney's fees against the insured.  The court rejected the insured's request that judgment against the insurer be entered *nunc pro tunc* to the date of the jury verdict so that post-judgment interest on the punitive damages award would start earlier.

The insurer appeals the nominal and punitive damages awards and the prevailing party determination.  The insured cross-appeals the adjuster's attorney's fees award, the jury's failure to award compensatory damages, the court's rejection of the insured's proposed jury instruction, and the court's refusal to enter judgment effective from the jury verdict date.  We affirm all aspects of the decision except the adjuster's attorney's fees award — we remand for further proceedings on that issue.

## II.    FACTS AND PROCEEDINGS

Sandra Gonzalez was injured in a 1996 car accident. Gonzalez's sister was driving the car and pulled into the path of an oncoming vehicle; the other vehicle struck the car's passenger side where Gonzalez was seated. Gonzalez's mother, the car's owner, had an insurance policy with Government Employees Insurance Company (GEICO), and GEICO paid Gonzalez $58,593.75 — the bodily injury liability coverage policy limit with interest — to release all bodily injury claims against her mother and sister.

In the months following the accident Gonzalez repeatedly requested payment under the policy's underinsured motorist (UIM) coverage as well, but GEICO did not respond to her requests. Gonzalez explicitly stated that by accepting the bodily injury settlement she was "not waiving any right to an underinsured motorist claim later on." Gonzalez requested UIM coverage again in 1998, and GEICO responded only by questioning her status as an insured. In 2000, after Gonzalez again requested UIM coverage, GEICO adjuster Michael Lina reviewed Gonzalez's UIM claim and paid her $83,487.50, including the UIM coverage policy limits and interest. But by then Gonzalez already had filed suit against GEICO and Lina.

Gonzalez initially tried to bring two class action claims against GEICO, but our holding in a previous appeal effectively eliminated one,[1] and she later voluntarily dismissed the other. That left two claims relevant to this appeal: (1) a negligent adjusting claim against Lina, and (2) a claim that GEICO acted in bad faith by failing to timely investigate and pay her UIM coverage benefits.

---

[1]    *See Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 287 (Alaska 2005) (holding that Alaska law did not require GEICO to list premiums for each level of optional UIM coverage on insurance application forms).

GEICO moved for partial summary judgment, asserting that at the time Gonzalez's claim arose an insurer could not, as a matter of law, be liable for bad faith failure to pay both bodily injury and UIM claims (known as "stacking"). GEICO noted that *Progressive Insurance Co. v. Simmons* — holding that Alaska law required stacking — had not yet been decided.[2] GEICO relied on an earlier unpublished memorandum decision in *Peter v. Progressive Corp.*, upholding a decision not to hold an insurer liable for bad faith failure to stack.[3] The superior court determined that our *Peter* decision had limited precedential value because it was an unpublished decision[4] and because it was based partly on the insurer's alternative grounds for denying coverage.[5] The court denied summary judgment because Gonzalez had presented evidence of GEICO's potential bad faith, showing that "GEICO offered some insureds, but not others, standstill agreements pending resolution of *Simmons*." Consequently the "insurer could honestly believe that [Alaska law] required stacking but conceal that information from some insureds in bad faith."[6]

---

[2]     *See* 953 P.2d 510 (Alaska 1998).

[3]     No. S-11416, 2006 WL 438658, at *6-7 (Alaska Feb. 22, 2006).

[4]     *Id.* at *1.

[5]     *Id.* at *6 ("Progressive had two reasonable bases for denying the claim. Under the policy and a literal interpretation of the applicable statute, the vehicles involved were not 'underinsured motor vehicle[s].' Further, whether either driver was at fault, and if so the extent of her fault, had not been determined." (alteration in original)).

[6]     GEICO appeals the denial of its summary judgment motion. But because the case proceeded to trial on the merits of the same factual issue on which the denial was based — whether GEICO's actions constituted bad faith — we decline to consider GEICO's summary judgment claim. *See Larson v. Benediktsson*, 152 P.3d 1159, 1169
(continued...)

A jury trial began in August 2012. Gonzalez testified about the accident and its consequences. Prior to the accident she had worked as a housekeeper and at an office supply store; she briefly resumed housekeeping after the accident, but the pain and swelling in her leg and ankle prevented her from working even part time. In addition to physical challenges, she suffered financial hardship and emotional distress between 1996 and 2000. Because she was unable to work, her family lived on her husband's $1,200 monthly income. During that time period she financially relied on her mother, who loaned Gonzalez about $30,000; housed Gonzalez's family for three months; and helped pay for a crib, diapers, a baby dresser, and expensive auto repairs. Gonzalez said that asking her mother for money felt "terrible" and embarrassing.

After the close of evidence the parties submitted final objections to proposed jury instructions. Gonzalez objected to the court's rejection of her proposed Jury Instruction 38; it stated that an insurer's belated payment of contract benefits does not relieve the insurer from liability for bad faith. The superior court nonetheless declined to give the disputed instruction.

The next day the jury issued a special verdict finding that (1) Lina did not negligently adjust Gonzalez's claim, and (2) GEICO acted in bad faith, but its conduct was not "a substantial factor in causing harm to . . . Gonzalez." The bad faith finding is at the heart of this dispute.

After the verdict Gonzalez asserted that, given the finding of bad faith, the jury must award her at least nominal damages. The parties and the court discussed the

---

**6** (...continued)
(Alaska 2007) (holding that when summary judgment "motions are denied on the basis that there are genuine issues of material fact," then "the order becomes unreviewable after a trial on the merits" (quoting *Ondrusek v. Murphy*, 120 P.3d 1053, 1055 n.2 (Alaska 2005))).

issue, and the court — to create a full record for appeal — gave the jury a supplemental instruction on nominal damages. The instruction directed the jury to assume that GEICO's bad faith was a substantial factor in causing Gonzalez's harm and to award Gonzalez nominal damages, describing those as "a trivial sum of money awarded to a litigant who has established a cause of action but has not established that she is entitled to compensatory damages." The jury asked the court whether $0 could be a trivial sum; the court responded that the jury must award at least $1. The jury returned a verdict awarding Gonzalez $1 for "[m]ental suffering, anxiety, humiliation, and emotional distress" and $1 for financial hardship. The jury then found Gonzalez also was eligible for punitive damages. After more trial testimony and a supplemental instruction, the jury awarded Gonzalez $450,000 in punitive damages. The jury then was excused.

The parties later disputed how to treat the jury's supplemental verdict and damages awards. In June 2013 the superior court rejected GEICO's assertion that it was improper for the jury to award nominal and punitive damages after finding GEICO's conduct was not a substantial factor in causing Gonzalez's harm. The court reasoned the jury's finding that GEICO acted in bad faith meant Gonzalez was entitled to nominal damages under our holding in *Ennen v. Integon Indemnity Corp.*[7] The court interpreted the jury's verdict to mean "the jury found that there was harm but that [Gonzalez] had failed to prove the amount of harm to the requisite degree of certainty," consistent with

---

[7]     268 P.3d 277, 291 (Alaska 2012) (holding on facts in insurance bad faith action that "[i]nterest alone does not compensate [the insured] for his financial hardship and related distress, and at a minimum he is entitled to nominal damages" (citing *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp.*, 221 P.3d 977, 990 (Alaska 2009))).

our nominal damages explanation in *Anchorage Chrysler Center, Inc. v. DaimlerChrysler Motors Corp.*[8]

The superior court then assessed the jury's punitive damages award under the United State Supreme Court's due process guideposts outlined in *BMW of North America, Inc. v. Gore*.[9] The court also assessed whether the jury's punitive damages award impermissibly punished GEICO for its conduct toward other insureds, as well as whether the statute allowing punitive damages was unconstitutional as applied, and found the punitive damages award constitutional in all respects.

In November 2013 the superior court issued a judgment and an accompanying order explaining that Gonzalez was entitled to 10.5% pre- and post-judgment interest, with prejudgment interest accruing from August 15, 1996. The judgment accordingly awarded Gonzalez prejudgment interest on her nominal damages and post-judgment interest on her total judgment, including nominal and punitive damages. Gonzalez then moved for judgment notwithstanding the verdict and a partial new trial. She asked the court to change the jury's answer to the question whether GEICO's conduct was a substantial factor in causing her harm from "no" to "yes." She sought a new trial on "compensatory damages because the jury's failure to award any compensatory damages was against the weight of the evidence." The court denied those motions in a June 2014 order.

---

[8] 221 P.3d at 990 (holding that nominal damages are available "when actual loss or injury is shown, but plaintiff has failed to prove the extent and amount of damages" (quoting *Zok v. State*, 903 P.2d 574, 577-78 (Alaska 1995))).

[9] 517 U.S. 559, 584-86 (1996) (holding that, although there is no "bright line marking the limits of a constitutionally acceptable punitive damages award," jury's $2 million punitive damages award for BMW's failure to disclose that some of its cars were repainted before sale "transcends the constitutional limit").

The parties also had sought attorney's fees, and in the June 2014 order the court determined that both Gonzalez and Lina were prevailing parties. The court awarded Gonzalez attorney's fees and costs against GEICO in the amount of $164,019.69. A final judgment was issued awarding Gonzalez a total of $614,025.31, including nominal and punitive damages, attorney's fees, costs, and prejudgment interest.

In August 2014 Gonzalez moved to amend the judgment *nunc pro tunc* for post-judgment interest to accrue as of August 2012, when the jury verdict was issued, rather than as of the November 2013 judgment date. The court denied that motion. Finally, the court calculated Lina's attorney's fees. Because Lina was represented by GEICO's counsel in the proceedings and did not adequately segregate fees he incurred from fees GEICO incurred, the court chose to "apportion the fees in a reasonable manner to assign to Lina his share," awarding him percentages of the requested fees for different litigation periods.

GEICO appeals the nominal and punitive damages awards, pre- and post-judgment interest determination, and prevailing party determination. Gonzalez cross-appeals the denial of her proposed jury instruction, related denials of her post-trial motions, and Lina's attorney's fees award.

## III.   STANDARD OF REVIEW

"Jury instructions involve questions of law to which we apply our independent judgment."[10] "[W]e review de novo whether a punitive damages award is grossly excessive under the due process clause of the Fourteenth Amendment."[11] "The determination of when prejudgment interest begins to accrue presents a legal question

---

[10]   *City of Hooper Bay v. Bunyan*, 359 P.3d 972, 978 (Alaska 2015) (quoting *Thompson v. Cooper*, 290 P.3d 393, 398 (Alaska 2012)).

[11]   *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1062 (Alaska 2005) (citing *Cent. Bering Sea Fishermen's Ass'n v. Anderson*, 54 P.3d 271, 277 (Alaska 2002)).

-8-                                                                          **7195**

that we review de novo."[12]  "When applying the de novo standard of review, we apply our 'independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[13]

We review for an abuse of discretion the denial of a motion for a new trial.[14]  But "[m]otions for judgment notwithstanding the verdict present questions of law that are reviewed on appeal de novo rather than deferentially."[15]  The parties agree that we should review for abuse of discretion the trial court's denial of Gonzalez's motion to amend the judgment *nunc pro tunc*.[16]

"We review for abuse of discretion a trial court's prevailing party determination.  Prevailing party determinations will be overturned only if they are manifestly unreasonable."[17]  We also review attorney's fees awards for abuse of

---

[12]     *Pederson v. Barnes*, 139 P.3d 552, 563 (Alaska 2006) (citing *Lloyd's & Inst. of London Underwriting Cos. v. Fulton*, 2 P.3d 1199, 1210 (Alaska 2000)).

[13]     *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014) (quoting *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 802 (Alaska 2011)).

[14]     *Hunter v. Philip Morris USA Inc.*, 364 P.3d 439, 447 (Alaska 2015) (quoting *Kava v. Am. Honda Motor Co.*, 48 P.3d 1170, 1173 (Alaska 2002)).

[15]     *Borgen v. A & M Motors, Inc.*, 273 P.3d 575, 584 (Alaska 2012) (citing *Cameron v. Chang-Craft*, 251 P.3d 1008, 1016-18 (Alaska 2011)).

[16]     *See Snook v. Bowers*, 12 P.3d 771, 775-76 (Alaska 2000) (citing *Johnson v. Doris*, 933 P.2d 1139, 1142 (Alaska 1997)) (applying abuse of discretion standard to *nunc pro tunc* motion treated as Alaska Civil Rule 60(b) motion).

[17]     *Progressive Corp. v. Peter ex rel. Peter*, 195 P.3d 1083, 1092 (Alaska 2008) (footnote omitted) (first citing *Interior Cabaret, Hotel, Rest. & Retailers Ass'n v. Fairbanks N. Star Borough*, 135 P.3d 1000, 1002 (Alaska 2006); then citing *Curran v. Hastreiter*, 579 P.2d 524, 531 (Alaska 1978)).

discretion and "will not find an abuse of discretion absent a showing that the award was arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive."[18]

## IV. DISCUSSION

The parties' points on appeal fall into four categories: jury instructions, damages, post-trial motions, and attorney's fees.

### A. Gonzalez's Proposed Jury Instruction

Gonzalez contends that the superior court erred when it rejected her proposed Jury Instruction 38 and failed to instruct the jury about "the legal effect of GEICO's belated payment." The proposed instruction, based on our *Ennen*[19] decision, stated: "The fact that an insurer ultimately pays benefits due under the contract does not relieve it from liability for negligence or bad faith if, in its handling of the claim, it unreasonably delayed payment of those benefits or otherwise breached its obligation of good faith and fair dealing." Gonzalez argues that the instruction was necessary to ensure that the jury did not believe the belated UIM benefits payment with interest cured GEICO's bad faith. In support she notes GEICO's closing argument statement that it "corrected" its error and "fully compensated" Gonzalez.

GEICO responds that Gonzalez mischaracterizes its closing argument and that no prejudice resulted because Jury Instructions 26 and 30 adequately informed the jury of the law regarding bad faith damages. Jury Instruction 26 described the bad faith cause of action, including the requirement that Gonzalez prove "[GEICO]'s bad faith actions were the legal cause of . . . Gonzalez's damages, if any." Jury Instruction 30

---

[18]    *Alaskasland.com, LLC v. Cross*, 357 P.3d 805, 825 (Alaska 2015) (quoting *Bush v. Elkins*, 342 P.3d 1245, 1251 (Alaska 2015)) (citing *Baker v. Ryan Air, Inc.*, 345 P.3d 101, 106 (Alaska 2015); *M-B Contracting Co. v. Davis*, 399 P.2d 433, 437 (Alaska 1965); *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)).

[19]    268 P.3d 277, 291 (Alaska 2012).

described Gonzalez's burden to prove damages. It stated that the jury "must decide how much money, if any, will reasonably compensate . . . Gonzalez for the harm." And it stated that "[t]he amount of damages must include an award for all harm that was caused by [GEICO], even if the particular harm could not have been anticipated." It placed the burden on Gonzalez to "prove the amount of her damages, if any, by a preponderance of the evidence." Neither instruction mentioned the effect of GEICO's post-lawsuit payment of UIM benefits with interest.

We see no reason the superior court should not have issued the proposed instruction. It was a correct statement of the law and was consistent with Gonzalez's theory that GEICO's delayed payment did not absolve it of bad faith.[20] No other jury instruction expressly addressed the effect of GEICO's post-lawsuit payment,[21] and GEICO may have caused some confusion by stating at closing that "[Gonzalez] received all of the coverages in the file. She received every last penny from that policy of insurance. The $144,000 fully compensated her. . . . GEICO did not act in bad faith."

But we note that neither party discusses Jury Instruction 27 in this context. That instruction set out what Gonzales was required to prove for her bad faith delayed payment claim:

> 1) . . . Gonzalez suffered a loss covered under an insurance policy with [GEICO];
>
> 2) [GEICO] was notified of the loss;

---

[20]  *See Parnell v. Peak Oilfield Serv. Co.*, 174 P.3d 757, 764 (Alaska 2007) ("We have previously recognized that a plaintiff is generally entitled to a jury instruction 'consonant with the theory of her case' if the evidence supports the plaintiff's theory." (quoting *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 201 (Alaska 1980))).

[21]  *See id.* at 765 (noting that "[t]he trial court's instructions did not otherwise make this point"); *see also Thompson v. Cooper*, 290 P.3d 393, 401 (Alaska 2012) (holding failure to instruct jury on issue central to theory of case was erroneous).

3) [GEICO] unreasonably, or without proper cause, denied or delayed payment of policy benefits;

4) . . . Gonzalez was harmed; and

5) [GEICO's] denial or delay in payment of policy benefits was a substantial factor in causing . . . Gonzalez's harm.

By stating that mere delay can lead to bad faith liability, Instruction 27 presumes that late payment of benefits is no defense to a bad faith claim, perhaps filling much of the gap left by proposed Jury Instruction 38's absence.

And even assuming the court's failure to issue the proposed instruction was error, we cannot say it caused prejudice.[22] Notwithstanding the proposed instruction's absence, the jury actually found that GEICO acted in bad faith.[23] And the jury's finding that GEICO's bad faith was not a substantial factor in causing Gonzalez's harm does not necessarily reflect a misunderstanding of the law. The harm alleged at trial — additional damages resulting from financial and emotional distress — was separate from the direct financial harm earlier remedied by GEICO's post-lawsuit contractual payment. In light of Instruction 27's language expressing that Gonzalez was entitled to recover for bad faith if GEICO had unreasonably delayed payment, we believe the jury's substantial factor finding reflects only its assessment of these additional damages. And even if the jury would have answered the substantial factor question differently had it received the disputed instruction, the superior court subsequently ordered the jury to assume the

---

[22]      "When reviewing a trial court's denial of a proposed instruction, our inquiry focuses upon whether the instructions given, when read as a whole, adequately inform the jury of the relevant law." *City of Hooper Bay v. Bunyan*, 359 P.3d 972, 978 (Alaska 2015) (quoting *Thompson*, 290 P.3d at 398). "An error in jury instructions is grounds for reversal only if it caused prejudice." *Id.* (quoting *Thompson*, 290 P.3d at 398-99).

[23]      *Cf. Parnell*, 174 P.3d at 765 (finding prejudice where "the jury may have returned a different verdict").

-12-                                                                 **7195**

answer to that question was "yes," correcting any prejudicial error relating to the substantial factor question.[24]

Although the court probably should have issued the proposed instruction, no prejudice resulted from that decision and reversal of the compensatory damages award is not warranted.

**B.    Damages**

GEICO disputes the awards of nominal and punitive damages, as well as the superior court's determination of the pre- and post-judgment interest rate for those damages.

### 1.    Gonzalez was entitled to nominal damages.

The jury initially found that GEICO acted in bad faith but that its bad faith was not a substantial factor in causing Gonzalez the asserted additional harm beyond the delayed payment.  The superior court then instructed the jury "to assume that the answer to [the substantial factor question] is 'YES' " and then "award a nominal amount of damages."  GEICO contends that the superior court erred by ordering the jury to award nominal damages and that doing so relieved Gonzalez of the burden of proving causation.

In its order addressing GEICO's arguments the superior court determined that "[g]iven the jury's finding that [GEICO] acted in bad faith, under *Ennen*, Gonzalez is entitled to an award of nominal damages, regardless of the jury's finding on causation and harm."  The court reasoned that "there could be multiple explanations" for the jury's finding that GEICO's bad faith was not a substantial factor in causing Gonzalez's harm:

---

[24]    *Cf. Kodiak Island Borough v. Roe*, 63 P.3d 1009, 1017 (Alaska 2003) (holding erroneous instruction was not prejudicial in part because error was not exploited).

-13-                                        **7195**

"For example, it could be that the jury found that there was harm but that plaintiff had failed to prove the amount of harm to the requisite degree of certainty."

We agree with the superior court that the jury's finding of bad faith compels a nominal damages award on the facts of this delayed-payment case. In *Ennen* we held that the insured was entitled to nominal damages when he received the insurance proceeds he was entitled to, plus interest, but only after years of delay.[25] We were concerned that allowing an insurance company to "arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed" would undermine the purpose of the bad faith cause of action.[26] We concluded that the insured "was deprived of the UIM benefits to which he was entitled under the policy," and the insurer's eventual payment of those benefits did not cure its initial bad faith.[27]

As in *Ennen*, Gonzalez was deprived of the benefits to which she was entitled, and her harm was not necessarily fully remedied by GEICO's 2000 post-lawsuit payment.[28] GEICO's post-lawsuit payment of all the monies due Gonzalez under the policy resolved Gonzalez's breach of contract claim. But the undisputed delay in payment and the jury's related bad faith finding demonstrate that GEICO's delay in paying the policy benefits caused a harm that, for bad faith tort claim purposes, cannot be vitiated. As we similarly discuss below in connection with the punitive damages award, an insurance company should not be allowed to buy immunity from a bad faith tort claim

---

[25]    *Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 291 (Alaska 2012).

[26]    *Id.* (quoting *State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1156 (Alaska 1989)).

[27]    *Id.*

[28]    *See id.*

merely by belatedly paying all sums due under the contract.[29]  Therefore the superior court correctly mandated that the jury award Gonzalez at least nominal damages for GEICO's bad faith, post-lawsuit UIM benefits payment.

We further note that the jury instructions and the jury's verdict reflect that the jury found the original payment delay harmed Gonzalez.  Again we look to Jury Instruction 27, which set out what Gonzalez had to prove for her bad faith claims:

> Gonzalez must prove that it is more likely true than not true that:
>
> 1) . . . Gonzalez suffered a loss covered under an insurance policy with [GEICO];
>
> 2) [GEICO] was notified of the loss;
>
> 3) [GEICO] unreasonably, or without proper cause, denied or delayed payment of policy benefits;
>
> 4) . . . Gonzalez was harmed; and
>
> 5) [GEICO]'s denial or delay in payment of policy benefits was a substantial factor in causing . . . Gonzalez's harm.

By answering "yes" to the question "Did [GEICO] act in bad faith?" the jury by implication seems to have found that each of the first four elements was satisfied with respect to the undisputed original delay in payment, including that "Gonzalez was harmed."  As we noted earlier, this jury instruction and the related jury verdict are precisely the reason there was no prejudice when Gonzalez's proposed Instruction 38 was not given.

---

**29**　*See In re Exxon Valdez*, 490 F.3d 1066, 1091 (9th Cir. 2007), *vacated*, *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) ("A defendant cannot buy full immunity from punitive damages by paying the likely amount of compensatory damages before judgment."); *Ennen*, 268 P.3d at 291 (without bad faith liability "insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed" (quoting *Nicholson*, 777 P.2d at 1156)).

The special verdict form contains other questions that appear to be drawn from the elements listed in Instruction 27, such as "Was [GEICO]'s denial and/or delay in payment of policy benefits unreasonable or without proper cause?" and "Was [GEICO]'s bad faith a substantial factor in causing harm to . . . Gonzalez?" The jury in its verdict found both unreasonable payment delay and bad faith. Given Gonzalez's request only for damages over and above the post-lawsuit payment, the jury's answer of "no" to the causation question cannot be interpreted to mean that GEICO did not actually harm Gonzalez.[30] It is clear from the facts and the verdict that GEICO caused direct pecuniary harm by its bad faith delay in paying policy benefits. But the real question, again, is whether the post-lawsuit payment of the policy benefits can foreclose an award of at least nominal damages based on the tortious conduct.

The superior court suggested that the jury's disputed substantial factor finding might mean that Gonzalez "failed to prove the amount of harm to the requisite degree of certainty." We interpret the superior court's statement to mean that Gonzalez failed to prove additional damages, such as those resulting from financial and emotional distress, with sufficient certainty;[31] under that interpretation nominal damages would still

---

[30]     *Cf. Alaska Interstate Constr., LLC v. Pac. Diversified Invs., Inc.*, 279 P.3d 1156, 1174 (Alaska 2012) (holding superior court erred by not granting judgment notwithstanding the verdict when jury determined one party committed fraud, compelling conclusion that agreement was breached "as a matter of law"); *ASRC Energy Servs. Power & Commc'ns, LLC v. Golden Valley Elec. Ass'n*, 267 P.3d 1151, 1166-67 (Alaska 2011) (ordering new trial where jury found breach of contract and although "the jury could reasonably have disputed the amount of damage caused by the breaches, there can be no dispute that the breaches caused . . . some damage"); *Grant v. Stoyer*, 10 P.3d 594, 596-97, 600 (Alaska 2000) (ordering new trial after jury found no compensable personal injury because "there was no genuine dispute that the collision had caused [plaintiff] to suffer some pain").

[31]     We recently noted the distinction between a finding of harm and  a finding
(continued...)

be available to Gonzalez. In *Anchorage Chrysler* we held "that nominal damages are typically awarded in two situations"; first as a result of "a technical invasion of a plaintiff's rights" such as a false arrest, or second "when actual loss or injury is shown, but plaintiff has failed to prove the extent and amount of damages."[32] We stated that "an award of nominal damages is appropriate where a party incurs a pecuniary loss of undetermined amount."[33] Therefore, even if Gonzalez failed to adequately prove additional damages beyond the post-lawsuit payment, she still was entitled to nominal damages for the harm caused by GEICO's bad faith payment delay.

In sum, the jury found that GEICO acted unreasonably and in bad faith by delaying payment of Gonzalez's UIM benefits. That bad faith payment delay caused Gonzalez pecuniary harm. We bear in mind: (1) our *Ennen* holding that eventual payment cannot cure prior bad faith; (2) our previous distinction between "harm" and "damages";[34] and (3) the actual jury instructions and special verdict in this case. Given these three considerations, Gonzalez was entitled to nominal damages despite not proving,

---

[31]    (...continued)
of damages resulting from that harm. *See Recreational Data Servs., Inc. v. Trimble Navigation Ltd.*, __ P.3d __, Op. No. 7162, 2017 WL 2951450, at *3, *14-15, *17 (Alaska Mar. 24, 2017, as amended Aug. 3, 2017) (observing that "fact of harm" and "amount of damages" were separate issues and ordering award of nominal damages after plaintiff sufficiently proved harm but not damages amount).

[32]    221 P.3d 977, 990 (Alaska 2009) (quoting *Zok v. State*, 903 P.2d 574, 577-78 (Alaska 1995)).

[33]    *Id.* at 991.

[34]    *See Recreational Data Servs.*, 2017 WL 2951450, at *14 (distinguishing "the *fact* of damages (i.e., the fact that the plaintiff suffered harm)" from "the *amount* of damages" (emphases in original)).

to the requisite degree of certainty, additional damages for pre-payment emotional and financial distress.[35]  We therefore affirm the superior court's rulings on this issue.

### 2.     The punitive damages award did not violate due process.

GEICO argues that the $450,000 punitive damages award was "grossly excessive" in violation of its constitutional due process rights.  GEICO also claims that the award unconstitutionally "punishes hypothetical injuries inflicted on non-parties."

GEICO's first argument is based on the United States Supreme Court's interpretation of Fourteenth Amendment due process.  The Court held in *State Farm Mutual Automobile Insurance Co. v. Campbell* that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."[36]  The Court reiterated three guideposts for measuring punitive damages: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."[37]

---

[35]     The jury's second special verdict form awarded Gonzalez $1 for emotional distress and $1 for financial hardship.  But in light of our conclusion that Gonzalez was entitled to nominal damages as a result of GEICO's bad faith, post-lawsuit payment, we do not need to parse whether Gonzalez was entitled to nominal damages for her alleged additional financial and emotional harm or instead for the harm resulting directly from the delayed payment of policy benefits.  *Cf. Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 291 (Alaska 2012) (discussing additional financial and emotional distress, but noting Ennen was entitled to at least nominal damages because "[i]nterest alone" did not cure prior bad faith).

[36]     538 U.S. 408, 416 (2003) (citing *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 433 (2001)).

[37]     *Id.* at 418 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

The first and most important guidepost, reprehensibility, consists of multiple subfactors, including:

> whether[] the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.[38]

Although Gonzalez was financially vulnerable, the harm was not physical and did not implicate health or safety. There was no evidence of malice, although GEICO repeatedly failed to investigate her UIM claim. Perhaps most favorable to Gonzalez was the evidence that GEICO failed to disclose potentially available UIM coverage to at least 15 other insureds around the time that Gonzalez's claim was pending. Based on that evidence GEICO's conduct was repeated, rather than isolated, indicating some reprehensibility.

Under the second guidepost — the disparity between actual and punitive damages — we have "not prescribe[d] a fixed ratio, or range of ratios, between punitive and compensatory damages,"[39] although we have recognized the Supreme Court's preference for single-digit ratios.[40] GEICO urges us to consider this a 225,000:1 ratio, based on the $2 compensatory damages award and the $450,000 punitive damages award.

But the actual harm Gonzalez suffered was greater than $2. We are persuaded by the Ninth Circuit Court of Appeals' reasoning in *In re Exxon Valdez* that

---

[38]   *Id.* at 419 (citing *Gore*, 517 U.S. at 576-77).

[39]   *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1064 (Alaska 2005) (citing *Fyffe v. Wright*, 93 P.3d 444, 457 (Alaska 2004)).

[40]   *See id.* at 1064, 1067 (citing *Campbell*, 538 U.S. at 408, 424-25).

-19-                    **7195**

Gonzalez's earlier post-lawsuit recovery of $83,487.50 in UIM benefits and interest should be included in calculating the ratio of actual to punitive damages.[41] In that case the court held that although an "amount that a defendant voluntarily pays before judgment should generally not be used as part of the numerator, because that would deter settlements prior to judgment," in some cases voluntary payments are properly considered if removing them would result in meager punitive damages.[42] As the court aptly noted, "[a] defendant cannot buy full immunity from punitive damages by paying the likely amount of compensatory damages before judgment."[43] Although we do not wish to deter settlements, $2 in actual harm would permit only the most meager punitive damages under GEICO's proposed rule. And more importantly GEICO's post-lawsuit voluntary payment did not cure its original tortious wrongdoing or immunize its conduct[44] and should not rule out the possibility of punitive damages. GEICO's calculation of the ratio is therefore flawed. When the full UIM coverage payment GEICO made after the lawsuit was filed is included in the calculation, the comparison of actual harm to punitive damages is reduced to a reasonable single-digit ratio.

Under the third guidepost — the difference between the penalty imposed and comparable civil penalties — AS 21.36.910 put GEICO on notice of the possibility of $250,000 in penalties for violating Alaska's insurance trade practices, and AS 09.17.020(f) expressly permits punitive damages of up to $500,000. The $450,000

---

[41]    *See* 490 F.3d 1066 (9th Cir. 2007), *vacated*, *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008).

[42]    *Id.* at 1079 (quoting *In re Exxon Valdez*, 270 F.3d 1215, 1244 (9th Cir. 2001)).

[43]    *Id.* at 1091.

[44]    *See Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 291 (Alaska 2012) (holding that "[i]nterest alone does not compensate" insured for insurer's bad faith).

punitive damages award in this case is not significantly greater than a comparable civil penalty and is less than the maximum punitive damages allowed by statute.[45]

GEICO repeatedly failed to investigate Gonzalez's and at least 15 other insureds' UIM benefits claims; this suggests reprehensible conduct. The ratio of the harm suffered by Gonzalez to the punitive damages award was within a reasonable range. And GEICO was on notice of a possible punitive damages award of up to $500,000. Therefore, none of the three guideposts suggests that the jury's punitive damages award violated GEICO's due process rights.

GEICO further argues that "[t]he record leaves little if any reasonable doubt that the jury impermissibly relied on GEICO's actions in other cases in determining the amount of its punitive damages award." GEICO cites the United States Supreme Court's *Philip Morris USA v. Williams* decision, holding that "us[ing] a punitive damages award to punish a defendant for injury that it inflicts upon nonparties . . . , i.e., injury that it inflicts upon those who are, essentially, strangers to the litigation," would violate the defendant's due process rights.[46] But the Supreme Court noted that "[e]vidence of actual harm to nonparties can help show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible."[47] In that case the plaintiff's counsel expressly — and improperly — asked the jury to consider Philip Morris's responsibility for harm to its "market share" of smokers.[48] The trial court then denied Philip Morris's request for an instruction that the jury could not

---

[45]    *See Casciola*, 120 P.3d at 1066 n.22, 1069 (upholding $300,000 punitive damages award with comparable $100,000 criminal fine).

[46]    549 U.S. 346, 353 (2007).

[47]    *Id.* at 355.

[48]    *Id.* at 350.

"punish the defendant for the impact of its alleged misconduct on other persons."[49] The Supreme Court reversed, holding that courts must protect against the risk of the jury attempting to punish the defendant for harm to nonparties.[50]

GEICO argues that the jury's punitive damages award can be attributed only to an attempt to punish the defendant for harm to other insureds, stating that "[w]ith the finding of no harm, and the desire to award plaintiff zero damages, there can be no other explanation other than the fact that the jury relied on the other cases as presented and argued by plaintiff." At the close of the punitive damages portion of the trial Gonzalez's attorney estimated that GEICO's nondisclosure of UIM coverage benefits led to about $450,000 of financial gain. The superior court later observed "that the jury's punitive damages award of $450,000 is suspiciously close to the figure suggested by Gonzalez's counsel for harm incurred by other, nonparty insureds." But the court correctly noted that the resemblance between the figures is not enough to overturn the punitive damages award. Alaska Statute 09.17.020 permits the fact finder to consider "the amount of financial gain" when making a punitive damages award, and that appears to have been the context of Gonzalez's attorney's statement.[51] The discussion of harm to others also was used as evidence of GEICO's "particularly bad conduct," a permissible reference to reprehensibility.[52] In context Gonzalez's attorney's statement was much less potentially

---

[49]     *Id.* at 351.

[50]     *Id.* at 357-58.

[51]     AS 09.17.020(c) ("[T]o determine the amount of punitive damages to be awarded, the fact finder may consider . . . the amount of financial gain the defendant gained or expected to gain as a result of the defendant's conduct.").

[52]     *See Philip Morris*, 549 U.S. at 355.

-22-                                                                    **7195**

misleading than the express request to consider "market share" of harm in *Philip Morris*.[53] We are not persuaded that the jury in this case used punitive damages to punish GEICO for harm to others.

GEICO lastly argues that "AS 09.17.020(f)(2) and (g)(3) are unconstitutional because these subsections permit recovery of up to $500,000.00 and $7,000,000.00, respectively." But those figures represent the upper limits of punitive damages in Alaska, and that statute does not demand such awards when they would violate the United States Supreme Court's due process decisions. GEICO's final argument is unpersuasive, and we affirm the jury's punitive damages award.

### 3. The superior court correctly identified the claim accrual date and pre- and post-judgment interest rate.

The superior court determined that Gonzalez's bad faith claim arose in 1996, requiring GEICO to pay 10.5% pre- and post-judgment interest.[54] GEICO argues that Gonzalez's claim did not arise until 1998, resulting in a much lower rate of pre- and post-judgment interest.[55] GEICO's argument rests on AS 09.30.070(b), which Gonzalez argues does not apply to this case.

Alaska Statute 09.30.070(b) states in pertinent part that "prejudgment interest accrues from . . . the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury." But

---

[53] *Id.* at 350.

[54] *Compare* former AS 09.30.070(a) (1996), *with* AS 09.30.070(a); *see Marine Sol. Servs., Inc. v. Horton*, 70 P.3d 393, 415 (Alaska 2003) (holding that former version of AS 09.30.070(a), providing for 10.5% interest, applied to causes of action accruing before August 7, 1997).

[55] *See Marine Sol. Servs.*, 70 P.3d at 415 (noting that for causes of action accruing after August 7, 1997, interest rate is "three percentage points above the 12th Federal Reserve District discount rate" (citing AS 09.30.070(a))).

we have held that AS 09.30.070(b) applies "only to actions for personal injury, death, or damage to property, and does not apply to claims for purely economic loss."[56] In all other cases interest begins to accrue when the claim arises, rather than when notice is received.[57] The superior court's decision appears to have been based both on AS 09.30.070(b) and our decision in *Alderman v. Iditarod Properties, Inc.*, a breach of contract case to which that provision did not apply.[58] But regardless whether AS 09.30.070(b) applies here, the superior court did not err in its determination of the prejudgment interest accrual date. Gonzalez's claim arose, and GEICO received notice that Gonzalez might bring a claim, at least by August 1996. On August 7 Gonzalez's attorney demanded UIM benefits and expressly stated that "[i]f you fail to respond to this demand within [15 days] you will, undoubtedly, be placing your insured in an excess position and subjecting [GEICO] to a bad faith suit."[59] GEICO failed to respond to Gonzalez's UIM claim, leading her attorney to reiterate in an August 15 letter that Gonzalez "will not waive her right to pursue the UIM further."[60] Gonzalez's claim

---

[56]    *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 724 (Alaska 2003) (quoting *Beaux v. Jacob*, 30 P.3d 90, 100 (Alaska 2001)).

[57]    *See Rice v. Denley*, 944 P.2d 497, 501 (Alaska 1997).

[58]    104 P.3d 136, 145 (Alaska 2004).

[59]    *See Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 645 (Alaska 2007) (holding, under AS 09.30.070(b), that a defendant "does not need to receive notice of an actual claim, but rather only needs to receive notice that a claim *may* be brought" (emphasis in original)).

[60]    Although we prescribe slightly different tests for when contract claims and tort claims arise, here the "date of injury" and the "date of breach" are both August 15, when GEICO first failed to respond to Gonzalez's demand for UIM coverage. *Morris v. Morris*, 724 P.2d 527, 529 (Alaska 1986) ("In contract actions, rights to prejudgment
(continued...)

accrued at least as of that letter, when it became apparent that GEICO was unwilling to investigate or pay her claim. And Gonzalez expressly put GEICO on notice of a potential lawsuit by threatening a bad faith claim and preserving her right to continue seeking UIM benefits. Under any theory Gonzalez was entitled to prejudgment interest as of August 1996.

### C. Post-Trial Motions

Gonzalez filed a number of post-trial motions related to the verdict and judgment, seeking judgment notwithstanding the verdict (JNOV), a new trial, and amendment of the judgment *nunc pro tunc*. Her motions for JNOV and a new trial both arose from the jury's verdict awarding nominal damages but not compensatory damages, an award she claims was insufficient to remedy her harm.

#### 1. The court did not err by denying Gonzalez's JNOV motion.

Gonzalez argues that the superior court erred by denying her motion for JNOV. Gonzalez requested that the superior court change the jury's answer to the question whether GEICO's bad faith was a substantial factor in causing her harm from "no" to "yes." The superior court denied the motion, stating that "[t]he evidence at trial could lead a reasonable jury to conclude that Gonzalez did not suffer financial hardship from the delayed payment." The court noted that Gonzalez ultimately did receive the UIM benefits and that in the meantime she had received a bodily injury settlement. On appeal Gonzalez argues that the superior court's reliance on those facts to support its decision was flawed and that the decision was contrary to our holding in *Ennen*.[61]

---

[60]    (...continued)
interest generally arise on the date of breach. In tort actions, they arise on the date of injury.").

[61]    268 P.3d 277, 291 (Alaska 2012).

"In reviewing the denial of motions for a directed verdict or JNOV, we do not weigh conflicting evidence or judge the credibility of witnesses."[62] "[W]e determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable persons could not differ in their judgment as to the facts."[63]

As we interpret the verdict, the jury found that although GEICO acted in bad faith by delaying payment and therefore caused Gonzalez some harm, Gonzalez failed to prove that GEICO's bad faith was a substantial factor in causing additional compensatory damages beyond GEICO's post-lawsuit payment of the policy benefits plus interest. Viewing the evidence in the light most favorable to GEICO, reasonable minds could differ whether additional harm resulted from GEICO's bad faith, making JNOV inappropriate. Although Gonzalez testified about her financial distress the jury could have attributed her difficulties to ordinary life events, such as having a child and car trouble, rather than to GEICO's bad faith. The superior court did not err in relying on the facts of Gonzalez's financial circumstances, such as her receipt of the bodily injury policy limits, as those were relevant considerations for whether Gonzalez sufficiently proved financial and emotional damages. Nor was the court's decision contrary to *Ennen*, because the issue was not whether Gonzalez was harmed by GEICO's bad faith delay of payment — she was — but rather whether she adequately proved additional financial and emotional harm.[64] We therefore affirm the superior court's decision denying Gonzalez's JNOV motion.

---

[62] *Ben Lomond, Inc. v. Schwartz*, 915 P.2d 632, 635 (Alaska 1996) (citing *Mullen v. Christiansen*, 642 P.2d 1345, 1348 (Alaska 1982); *Richey v. Oen*, 824 P.2d 1371, 1374 (Alaska 1992)).

[63] *Id.* (citing *Mullen*, 642 P.2d at 1348).

[64] *See* 268 P.3d at 291.

### 2. The court did not abuse its discretion by denying Gonzalez's new trial motion.

Gonzalez asserts that the superior court abused its discretion by denying her motion for a new trial on compensatory damages. She argued to the superior court that her $2 recovery was "contrary to the weight of the evidence." The court denied her motion, stating that because Gonzalez ultimately received her UIM benefits and it was "very difficult to prove" whether the delay caused damages, a new trial on the compensatory damages issue was not appropriate.

The superior court "must use its discretion and independently weigh the evidence"[65] when deciding whether the jury's verdict goes against the weight of the evidence, and "we have expressed great reluctance to interfere with a superior court's decision to deny a new trial, absent exceptional circumstances."[66] We therefore will not overturn a superior court's denial of a new trial unless "the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust."[67]

Gonzalez first asserts that the superior court misapplied *Ennen* when it stated that "[t]he bad faith of other employees of GEICO was rectified by Lina, and Gonzalez was paid." But we do not interpret that statement to mean that the UIM benefits payment cured GEICO's bad faith. Rather, the court agreed with the jury's finding that GEICO's

---

[65] *Hunter v. Philip Morris USA Inc.*, 364 P.3d 439, 447 (Alaska 2015) (quoting *Kava v. Am. Honda Motor Co.*, 48 P.3d 1170, 1176 (Alaska 2002)).

[66] *Marron v. Stromstad*, 123 P.3d 992, 1011 (Alaska 2005) (footnote omitted) (first citing *Alaska Children's Servs., Inc. v. Smart*, 677 P.2d 899, 901 (Alaska 1984); then citing *Getchell v. Lodge*, 65 P.3d 50, 53 (Alaska 2003)).

[67] *Hunter*, 364 P.3d at 447 (quoting *Hogg v. Raven Contractors, Inc.*, 134 P.3d 349, 352 (Alaska 2006)).

bad faith caused Gonzalez no additional harm beyond its belated post-lawsuit payment of the policy limits and interest; or, as GEICO states, the "court was acknowledging that the case is about a delayed payment, not a 'denied' payment." The superior court did not misapply *Ennen* when it denied the motion for a new trial.

Gonzalez also argues that the evidence supporting the jury's decision to award only $2 was so lacking that the verdict was unreasonable and unjust. But the trial evidence supported the jury's conclusion regarding the amount of nominal damages, and we see no reason to overturn the superior court's denial of a new trial. The jury could have found that Gonzalez's asserted financial and emotional difficulties were not the result of GEICO's bad faith or that Gonzalez did not sufficiently prove the amount of harm she suffered.[68] The superior court's denial of a new compensatory damages trial was not an abuse of discretion.

### 3. The court did not abuse its discretion by denying Gonzalez's motion to amend the judgment *nunc pro tunc*.

Gonzalez claims that the superior court erred by denying her motion to amend the judgment *nunc pro tunc*. Gonzalez's argument stems from the delay between the August 2012 jury verdict and the court's November 2013 entry of judgment. Because prejudgment interest is not available on punitive damages,[69] amending the date of judgment would have allowed Gonzalez to recover post-judgment interest on her punitive damages award from the earlier date. The superior court denied Gonzalez's motion,

---

[68] *See Ennen*, 268 P.3d at 291 n.85 (discussing availability of nominal damages when additional damages not sufficiently proven (citing *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp.*, 221 P.3d 977, 990 (Alaska 2009)).

[69] AS 09.30.070(c) ("Prejudgment interest may not be awarded for future economic damages, future noneconomic damages, or punitive damages.").

stating only that it found "the opposition well taken." We conclude that the superior court's denial of Gonzalez's motion was not an abuse of discretion.

GEICO correctly notes that amendment of the judgment *nunc pro tunc* was not the correct procedural device for attempting to alter the interest accrual date. We have held that "the *nunc pro tunc* device was an inappropriate means of causing postjudgment interest to accrue from the date of entry of the original, erroneous judgment rather than from the date of judgment on remand."[70] It follows that amendment *nunc pro tunc* is not the appropriate device to cause post-judgment interest to accrue from the original verdict date. And the delay between issuance of the verdict and entry of judgment here does not require amending the judgment's effective date.

Because "we view interest on damage awards to be a form of compensation for the period that the plaintiff remains 'less than whole,' " we have held that a successful litigant is entitled to post-judgment interest even if that litigant chooses to pursue an appeal.[71] But that rationale does not apply to a delay between a jury verdict and entry of judgment. The period between the verdict and the judgment in this case was not a time in which GEICO impermissibly had use of Gonzalez's money, but rather was a time when the court was deciding critical post-verdict issues — the subjects of this appeal — and Gonzalez's recovery still was in dispute.[72] Only after the court entered judgment was

---

[70] *Isaacson Structural Steel Co., Div. of Isaacson Corp. v. Armco Steel Corp.*, 640 P.2d 812, 817 n.11 (Alaska 1982).

[71] *Farnsworth v. Steiner*, 638 P.2d 181, 185 (Alaska 1981) (holding that appealing judgment should not deprive party of right to post-judgment interest accrued during that time); *see also Isaacson*, 640 P.2d at 818 (holding that post-judgment interest accrued as of original judgment date rather than judgment on remand).

[72] *Cf. Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 826 (Alaska 2005) (holding "superior court was . . . justified in delaying entry of judgment" for over
(continued...)

Gonzalez entitled to the use of her punitive damages award and, accordingly, post-judgment interest on that award.

**D.     Attorney's Fees**

    **1.     The superior court did not abuse its discretion by determining that Gonzalez was a prevailing party and awarding her attorney's fees and costs.**

GEICO contends Gonzalez was not the prevailing party and should not have been awarded attorney's fees and costs.  GEICO argues that "Gonzalez undoubtedly viewed her most valuable claim as her class action" and that the failure of the class action claims demonstrates she was not a prevailing party.  Because "we have explained a party may prevail even if it wins only one of many claims[,] and . . . we have cautioned courts not to merely count claims to determine prevailing party status," GEICO's argument fails.[73]

In *Progressive Corp. v. Peter ex rel. Peter* we held that "[p]arties who do not recover on every issue can still be regarded as prevailing if they nonetheless recover a significant damage award on the main issue.  Even if a party prevails on only one of the main issues, it is not necessarily ineligible for being considered the prevailing party."[74]

---

[72]     (...continued)
a year after jury returned its supplemental verdict because "disputed post-verdict motions were pending").

[73]     *Schultz v. Wells Fargo Bank, N.A.*, 301 P.3d 1237, 1241-42 (Alaska 2013) (footnote omitted) (first citing *Progressive Corp. v. Peter ex rel. Peter* 195 P.3d 1083, 1093 (Alaska 2008); then citing *State, Dep't of Corr. v. Anthoney*, 229 P.3d 164, 168 (Alaska 2010)).

[74]     195 P.3d at 1093 (footnote omitted) (first citing *Blumenshine v. Baptiste*, 869 P.2d 470, 474 (Alaska 1994); then citing *Day v. Moore*, 771 P.2d 436, 437 (Alaska 1989); and then citing *W. Airlines, Inc. v. Lathrop Co.*, 535 P.2d 1209, 1217 (Alaska (continued...)

In that case plaintiffs brought 16 causes of action against their insurer.[75] Only one claim resulted in recovery, a $75,681.27 UIM coverage payment plus interest, which Progressive paid voluntarily during the course of litigation but which was "a product of the litigation."[76] We held that although plaintiff sought a much larger recovery, the payment received was not *de minimis* and the superior court did not abuse its discretion by considering the plaintiffs the prevailing parties.[77] Under *Peter* GEICO's claim that Gonzalez's recovery was "nominal . . . at best" because she "lost on all but one claim decided at trial" is unpersuasive. Gonzalez prevailed on "one of the main issues," bad faith, and — in addition to obtaining post-lawsuit payment of the UIM policy limits and interest — recovered much more than *de minimis* punitive damages.[78]

GEICO also points to our *Hutchins v. Schwartz* statement that "[a] party who successfully defeats a claim of great potential liability may be the prevailing party even if the other side is successful in receiving an affirmative recovery."[79] But the plaintiff's *de minimis* recovery of just over $1,000 in *Hutchins* was a small fraction of what the plaintiffs recovered in *Peter* and here.[80] And in *Hutchins* we held only that naming the

---

[74]     (...continued)
1975)).

[75]     *Id.* at 1092.

[76]     *Id.* at 1093-94.

[77]     *Id.*

[78]     *See id.* at 1093.

[79]     724 P.2d 1194, 1204 (Alaska 1986).

[80]     *Id.*; *see Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1327 (Alaska 1993) (describing *Hutchins* recovery as "so small in comparison with what was
(continued...)

defendant the prevailing party was within the trial court's "wide discretion"; we did not hold that every defendant who avoids a great liability is necessarily a prevailing party.[81]

We therefore affirm the superior court's discretionary determination that Gonzalez was a prevailing party; the superior court did not err by awarding her attorney's fees.

### 2. Lina was entitled to attorney's fees, but the calculation of those fees was an abuse of discretion.

Gonzalez contends first that Lina waived his right to seek attorney's fees and second that the superior court's fees calculation was erroneous. The court entered final judgment on November 12, 2013. Lina submitted his motion for attorney's fees on November 18, 2013. The court determined in a June 2014 decision that Lina was a prevailing party entitled to attorney's fees and ordered that "Lina shall submit an invoice of all the time that was spent on his case only." Lina submitted his renewed motion for attorney's fees and a $42,691.32 invoice in September 2014. Despite Gonzalez's objection the court ruled that Lina's three-month delay in submitting his invoice did not constitute waiver because the court's failure to set a submission deadline "was an oversight on the court's part." The court further determined that the delay was reasonable and did not prejudice Gonzalez.

We agree with the superior court's determination that Lina did not waive his right to seek attorney's fees. Alaska Civil Rule 82(c) states that a motion for an award of attorney's fees "must be filed within 10 days after the date shown in the clerk's certificate of distribution on the judgment as defined by [Alaska] Civil Rule 58.1." The

---

[80] (...continued)
sought that it may properly be considered *de minimis*").

[81] *Hutchins*, 724 P.2d at 1204 ("Schwartz faced a potential liability of $275,000 but must pay only $1,937.09 less 40%.").

parties agree that Lina met that deadline. Gonzalez argues that Lina violated the rule by taking three months to submit his fee invoices after the superior court determined he was a prevailing party. But Lina correctly notes that Rule 82 does not establish a deadline for such submissions. And to the extent that Lina's supplemental filings are governed by Rule 82, we held in *Cizek v. Concerned Citizens of Eagle River Valley, Inc.* that the superior court has discretion to allow additional time unless it is "unreasonable or result[s] in prejudice to the opposing party."[82] Gonzalez has pointed to no unreasonableness or prejudice in the time it took Lina to submit his fee invoices. We therefore uphold the superior court's determination that Lina did not waive his right to attorney's fees.

The superior court then sought to determine Lina's actual reasonable fees. Because Lina and GEICO were represented by the same counsel, but only Lina was entitled to attorney's fees, it was a challenging task. Three different firms represented Lina and GEICO during over a decade of litigation. According to the superior court the bills Lina provided were "not detailed enough to accurately identify only those tasks performed for Lina's benefit and not for GEICO's benefit." And Lina himself had multiple roles in the litigation, not only as an individual defendant but also "as a representative of GEICO in fielding discovery responses and reviewing the work of the attorneys." He also helped GEICO fight class certification, a role that did not entitle him to fees.[83]

---

[82]    71 P.3d 845, 849 (Alaska 2003) (citing *Alderman v. Iditarod Props., Inc.*, 32 P.3d 373, 397 (Alaska 2001)).

[83]    The parties agree that Lina is not entitled to fees related to defending against the class action claims. Gonzalez disputes whether the fees awarded to Lina included his work related to the class action, but that issue should be addressed by the parties and the superior court on remand. Lina does not dispute the superior court's determination that he was not entitled to fees associated with appellate matters, and on

(continued...)

The court determined that because "a line by line and item by item review will not provide a satisfactory answer, a different approach must be taken, to apportion the fees in a reasonable manner to assign to Lina his share of the attorney's fees." The court divided the litigation into three time periods: (1) November 2000 to October 2011; (2) October 2011 to May 2012; and (3) May 2012 to the end of litigation. During the first period litigation was focused principally on the class claims. Because of the three roles Lina played in the litigation during that time, the court concluded "33% of the work Lina performed during this time was for his individual case" and allocated him 33% of the attorney's fees incurred. For the middle period the court determined that "[a]lthough most of the bill was for work performed on Lina's behalf, some of the work also benefitted GEICO," and allocated Lina 80% of those fees. For the final period the court found that "an equal allocation [was] reasonable as between [Lina and GEICO]." The court accordingly calculated that Lina's total fees were $72,005.35. Under Rule 82(b)(2) the court reduced the award to 30% and awarded Lina $21,601.61.

The attorney's fees award to Lina was an abuse of discretion. In *Offshore Systems–Kenai v. State, Department of Transportation & Public Facilities* we found an abuse of discretion when the superior court awarded attorney's fees despite being "unable to determine which of the [prevailing party's] fees related to its limited issue and which related to other issues."[84] We held that because "[t]he superior court's order implicitly

---

[83]    (...continued)
remand the court should ensure that those fees are not included in any award.

[84]    282 P.3d 348, 359 (Alaska 2012); *see Lyman v. State*, 824 P.2d 703, 707 (Alaska 1992) (remanding for more detailed itemization of attorney's fees because "[t]he record at present does not include enough information to determine which costs and attorney's fees derive from defending the state law claim as distinguished from the federal law claims," and attorney's fees "should be limited to the lone state law cause of (continued...)

concluded that the [prevailing party] did not meet its burden of proof," it abused its discretion by nevertheless awarding attorney's fees.[85]  When attorney's fees implicate multiple parties[86] or multiple issues[87] the burden is on the prevailing party — not the court — to segregate attorney's fees to demonstrate they are "both reasonable and necessarily incurred."[88]

We appreciate the difficulty of apportioning attorney's fees here, and the superior court made an admirable effort to do so in a fair and reasonable way.  We have held in cases involving apportionment of fees among multiple non-prevailing parties that the fees should "be roughly proportionate to their active involvement in the case."[89]  But

---

[84]  (...continued)
action"); *see also Maness v. Daily*, 307 P.3d 894, 906-07 (Alaska 2013) (remanding to allocate attorney's fees between state and federal law claims).

[85]  *Offshore*, 282 P.3d at 359.

[86]  *See Mitford v. de Lasala*, 666 P.2d 1000, 1008 (Alaska 1983) ("[I]f these two [prevailing] defendants can show that the time that their counsel has spent to this point on this case can be segregated to reflect services rendered solely in their behalf, an award of attorneys' fees to them as prevailing parties pursuant to . . . Rule 82(a)(2) would be appropriate.").

[87]  *Maness*, 307 P.3d at 906-07; *Offshore*, 282 P.3d at 358-59.

[88]  *Nautilus Marine Enters., Inc. v. Exxon Mobil Corp.*, 332 P.3d 554, 560 (Alaska 2014) ("Rule 82(b)(2) provides that the attorney fees on which an award is based must be both reasonable and necessarily incurred."); *see* Alaska R. Civ. P. 82(b)(2) ("In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred . . . .").

[89]  *Nautilus*, 332 P.3d at 564; *see also Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 71 P.3d 845, 853-54 (Alaska 2003) (holding unequal apportionment of fees between co-defendants was not abuse of discretion if parties' litigation efforts
(continued...)

"[i]t was not the superior court's duty to 'parse' the record to ascertain which fees were reasonably related to" Lina's defense; that burden was on Lina.[90] Lina failed to meet his burden, instead merely "identif[ying] all those items that involved him." On remand Lina must more precisely "segregate [his] fees and demonstrate which are reasonably related to the limited issue" of defending Gonzalez's individual claim against him.[91] If he cannot meet that burden, he is not entitled to attorney's fees.[92]

## V. CONCLUSION

The superior court's decision is AFFIRMED in all respects except the calculation of Lina's attorney's fees, which we REMAND for further proceedings consistent with this opinion.

---

[89]    (...continued)
were unequal); *Thorstenson v. ARCO Alaska, Inc.*, 780 P.2d 371, 77 (Alaska 1989) ("Each plaintiff should be charged with his proportional share of fees incurred prior to the resolution of his claim.").

[90]    *Offshore*, 282 P.3d at 359; *see also Lyman v. State*, 824 P.2d 703, 707 (Alaska 1992) ("For attorney's fees, the superior court can order . . . counsel to itemize the hours and nature of the work spent on the case." (citing *Hayes v. Xerox Corp.*, 718 P.2d 929, 939 (Alaska 1986))).

[91]    *See Offshore*, 282 P.3d at 359.

[92]    *Id.*